Mark D. JOHNSON, Appellant,

v.

STRUCTURED ASSET SERVICES, LLC, Appellee.

No. 05–03–00075–CV.

Court of Appeals of Texas, Dallas.

Oct. 29, 2004.

John M. Gillis, Dallas, for appellant.

Earl S. Nesbitt, Nesbit & Vassar, L.L.P., Addison, for Appellee.

Before Justices WHITTINGTON, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This is an appeal from a judgment entered in an interpleader action involving structured settlement payments. Appellant Mark D. Johnson and appellee Structured Asset Services, LLC (Structured Asset) were the competing claimants. Johnson appeals the Final Judgment in favor of Structured Asset, awarding it funds that were placed in the registry of the court by Integrity Life Insurance Company, Inc., pursuant to a structured settlement agreement. Johnson argues that the trial court erred by concluding that he waived an anti-assignment provision in that agreement and that he was estopped from raising that provision as a defense, that the trial court erred in awarding all of the monthly payments to Structured Asset when only a portion of each payment had been assigned, and that the trial court erred by concluding that the underlying assignment was not against public policy. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Johnson filed and settled a lawsuit seeking recovery for injuries he sustained when he was struck by a car.[1] As part of the settlement, Johnson received a lump sum payment in the amount of $702,000 as well as future structured settlement payments as follows:

(1) $2,000 per month from December 1986 to November 1991 (sixty months);

(2) $2,500 per month from December 1991 to November 1996 (sixty months);

(3) $3,000 per month from December 1996 to November 2001 (sixty months);

(4) $3,500 per month from December 2001 to November 2006 (sixty months);

(5) $4,000 per month from December 2006 to November 2011 (sixty months);

(6) $4,500 per month from December 2011 to November 2016 (sixty months);

(7) $5,000 per month from December 2016 to November 2021 (sixty months); and

(8) $5,500 per month from December 2021 to November 2026 (sixty months).

The terms of the Settlement Agreement also provided that:

[s]aid payments cannot be accelerated, deferred, increased, or decreased by [Johnson] and no part of the payments called for herein or any assets of the Defendant and/or the Insurers is to be subject to the execution or any legal process for any obligation in any manner, nor shall [Johnson] have the power to sell or mortgage or encumber same, or in any part thereof, nor anticipate the same, or any part hereof, by assignment or otherwise.

The Home Insurance Company was obligated to make the future settlement payments to Johnson and purchased an annuity from Integrity to fund those payments. It assigned the obligation to make the payments and the ownership of the annuity to Equitable Life Assurance Society. Johnson approved that assignment. In December 1986, Integrity began making the monthly payments to Johnson.

In February 1998, Johnson saw a television commercial for Stone Street Capital, Inc., advertising that it would pay a lump sum in return for the assignment of future payments due under structured settlements. Johnson called the advertised 1–800 telephone number to learn more about

---

1. The personal injury lawsuit was styled *Mark Beckering a/k/a Mark Johnson v. Floyd V. Yarger and Builders Transportation, et al.,* Cause No. 85–288, 86th Judicial District Court, Rockwall County, Texas.

it. Johnson submitted his Application for Sale of Periodic Payments and Stone Street responded with a written offer to purchase a portion of Johnson's future monthly payments. Johnson signed the letter, accepting the offer, and returned it to Stone Street. Stone Street agreed to pay Johnson $132,844 in exchange for Johnson's assignment of his future monthly payments as follows:

(1) $2,500 per month from March 1998 to November 2001 (forty-five months);

(2) $3,000 per month from December 2001 to November 2006 (sixty months); and

(3) $3,500 per month from December 2006 to February 2011 (fifty-one months).

These assigned monthly payments were $500 per month less than the total of each monthly payment due to Johnson under the structured settlement and did not include assignment of future payments after February 2011. Stone Street agreed to receive the total monthly payment and send Johnson the $500 due to him each month. Johnson signed the documents that Stone Street sent to him.[2]

Stone Street wired four payments totaling $130,344 to Johnson's bank account pursuant to the written wiring instruc-tions.[3] Johnson used $83,000 to buy a house and $17,000 or $18,000[4] to complete the loan payments on his truck.

In March of 1998, Stone Street assigned the Annuity Payment Purchase Agreement with Johnson to Settlement Trust with Stone Street as servicer and agent for Settlement Trust.

On April 20, 1998, Equitable received a letter addressed to Integrity from Johnson changing the beneficiary of his policy to the "Mark D. Johnson Trust" with the address of 18351 Kuykendahl, No. 251, Spring, Texas 77379–8158, which is the address for Stone Street's lock box.[5] The letter did not mention Johnson's assignment of the settlement proceeds to Stone Street. Equitable confirmed these changes and notified Integrity to make the change. Stone Street received the eleven monthly payments from April 1998 to February 1999 and sent $500 of each monthly payment to Johnson.

In February 1999, without contacting Stone Street, Johnson faxed a letter to Integrity directing that the monthly payments should go to his residence instead of to Stone Street's lock box. As a result, Johnson received four of the monthly payments from March to June 1999.[6] In June

2. Those documents included the Periodic Payment Right Purchase Agreement, a Security Agreement, a Seller's Affidavit, an Absolute Unconditional, and Irrevocable Transfer and Assignment, Wiring Instructions, and some other documents.

3. Stone Street offset $2,500 of its obligation to pay $132,844 because there was a delay in the closing and during that delay a $2,500 monthly payment was made directly to Johnson instead of to Stone Street.

4. The record does not state the exact amount that Johnson paid to complete the loan payments on his truck, it merely states that he paid $17,000 to $18,000.

5. The letter does not expressly state that Johnson is changing his address to 18351 Kuykendahl, No. 251, Spring, Texas 77379–8159. Instead, Johnson's letter uses this Spring, Texas address as his return address. However, in Integrity's First Petition in Interpleader, it states that Johnson requested that the payments be sent to the Spring, Texas address. The record also shows that Integrity did change the address to which the payments were sent after receiving notification from Equitable of Johnson's letter.

6. Based upon the terms of the structured settlement agreement, the monthly payments for March, April, May and June of 1999 would have been in the amount of $3,000.00 each. Because these four payments were diverted

1999, Stone Street sued Johnson in the Circuit Court of Montgomery County, Maryland, in a case styled *Stone Street Capital, Inc. v. Mark D. Johnson,* Civil No. 200298. Johnson was personally served with the Maryland lawsuit on June 26, 1999. The Maryland court granted a Preliminary Injunction on July 7, 1999, ordering Johnson to stop redirecting any of the monthly payments to himself and directing Integrity to send the monthly payments to Stone Street's lock box in Spring, Texas. Johnson did not appear or take any action in the Maryland lawsuit and did not comply with the orders entered by the Maryland court. On July 24, 2000, the Maryland court entered a Default Judgment and Order against Johnson and awarded Stone Street damages and injunctive relief as well as the periodic monthly payments.[7]

Integrity attempted to comply with the Maryland Judgment by making the monthly payments to Stone Street. However, Johnson demanded that Integrity send him the monthly payments and threatened to sue if it ignored his instructions. Johnson also submitted a change of address form to the U.S. Postal Service directing that items sent to him care of Stone Street's lock box at 18351 Kuykendahl, No. 251, Spring, Texas 77379–8158 be sent to his residence at 95 Leesburg, Texas 75451. In June of 2002, Structured Asset took over Stone Street's position as servicer and agent for Settlement Trust.

Eventually, both Structured Asset and Johnson were demanding that Integrity send them the payments. As a result of these competing demands, Integrity filed this interpleader action on September 4, 2001, naming Johnson and Stone Street as interpleader defendants. Integrity also deposited $27,000, the sum of the annuity benefits subject to the competing claims, with the Clerk of the Court. On October 15, 2001, Johnson filed his Original Answer generally denying the allegations and asserting a general claim to the funds. On November 29, 2001, Structured Asset filed its Plea in Intervention and Original Cross Claim. Johnson did not oppose Structured Asset's intervention. Integrity filed its Non–Suit of Stone Street.

On July 12, 2002, Johnson filed his unverified First Amended Original Answer asserting several affirmative defenses. Johnson did not specifically plead contractual anti-assignment language as an affirmative defense.

At mediation, Johnson and Structured Asset settled with Integrity and agreed that Integrity would be dismissed with prejudice from the interpleader action.[8]

The settlement agreement between Johnson, Structured Asset, and Integrity left one issue remaining for the trial court to decide: Who was entitled to receive the interpleaded funds, Structured Asset or Johnson? On October 22, 2002, after a one day trial, the trial court rendered a Final Judgment in favor of Structured As-

from Stone Street to Johnson, it appears that he received a total of $12,000.00. However, under the terms of the assignment Johnson was only entitled to receive $500.00 of each monthly payment, for a total of $2,000.00.

7. Stone Street argued the full faith and credit, and res judicata effect of the Maryland judgment in the trial court. However, the trial court did not rule on that basis and it is not brought forward as an issue on appeal.

8. Under the terms of the settlement agreement, Integrity recovered attorneys' fees from a portion of the monthly payments held in the registry of the court and was discharged from the lawsuit in exchange for its agreement to honor and comply with any judgment rendered in the case. On August 12, 2002, the trial court signed an Agreed Order of Dismissal with Prejudice dismissing Integrity from the case and awarding it $6,000 in attorneys' fees.

set awarding it all of the funds in the registry of the court, including any interest accrued on the funds, approximately $60,500, but less the $6,000 in attorneys' fees to be paid to Integrity. The Final Judgment also awarded Structured Asset the right to receive monthly payments as follows:

(1) $3,000 per month from August 19, 2002 to November 2006 (fifty-two months); and

(2) $3,500 per month from December 2006 to February 2011 (fifty-one months).

The trial court issued Findings of Fact and Conclusions of Law on November 19, 2002. Johnson appeals the Final Judgment entered in favor of Structured Asset.

## II. ANTI–ASSIGNMENT PROVISIONS

In his first issue on appeal, Johnson argues that the trial court erred when it concluded that he waived the anti-assignment provision in the settlement agreement and that he was estopped from raising the anti-assignment clause as a defense. Structured Asset argues that this issue was waived because Johnson failed to raise it at trial, that he is estopped from relying on the anti-assignment clause, and that he waived his rights under that clause.

### A. Standard of Review

The findings of fact are binding upon the parties and the appellate court because they are not challenged on appeal. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, no writ); *Kershner v. State Bar of Texas,* 879 S.W.2d 343, 347–48 (Tex.App.-Houston [14th Dist.] 1994, writ denied). However, the appellate court may review the conclusions the trial court draws from or applies to the facts found to determine their cor-

rectness. *Linton v. Airbus Industrie,* 934 S.W.2d 754, 757 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

### B. Waiver of Issue on Appeal

■ Structured Asset argues that Johnson has waived the anti-assignment clause as an affirmative defense because he raised it for the first time on appeal. Although Johnson did not specifically plead the anti-assignment clause in his unverified First Amended Original Answer as an affirmative defense, the trial court record demonstrates that the anti-assignment clause was addressed at trial. A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that both parties understood the issue was in the case, and the other party fails to make an appropriate complaint. Tex.R. Civ. P. 67; *see Frazier v. Havens,* 102 S.W.3d 406, 411 (Tex.App.-Houston [14th Dist.] 2003, no pet.). To determine whether an issue was tried by consent, the reviewing court must examine the record, not for evidence of the issue, but rather for evidence of trial of the issue. *Hoggett v. Brown,* 971 S.W.2d 472, 496 n. 4 (Tex. App.-Houston [14th Dist.] 1997, pet. denied).

■ At trial, Structured Asset stated in argument that, "[Johnson's] trying to narrow it down to simply a contractual anti-assignment provision that [he] waived, and it's not that simple. So I would ask—I think it would benefit the Court if we actually submit a formal post-trial brief on those issues." Structured Asset's post trial brief specifically addressed the issue of the enforceability of the anti-assignment clause. In its Conclusions of Law, the trial court ruled on the merits of the issue, concluding that "Johnson waived any contractual provisions in the 1986 Settlement Agreement and other underlying settle-

ment documents which purported to restrict his right to assign the Periodic Payments," and that "Johnson is estopped from raising anti-assignment language in the underlying settlement documents as a defense in this case." As a result, the enforceability of the anti-assignment clause was raised as an issue at trial and we conclude that Johnson did not waive this issue. Tex.R. Civ. P. 67.

## C. Applicable Law

### 1. Choice of Law

Johnson argues that the laws of the Commonwealth of Pennsylvania are to be applied to his agreement with Stone Street. In support of his argument, Johnson refers to a choice of law provision in the agreement entitled *"Governing Law; Venue "* that states:

> [Stone Street] is a corporation incorporated under the laws of the Commonwealth of Pennsylvania. This Agreement, the other Closing Documents, and the obligations of the parties hereunder and thereunder shall be governed, interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Pennsylvania and the United States of America. The parties hereto waive the right to be sued elsewhere and agree and consent to the jurisdiction of any court of competent jurisdiction located in the Commonwealth of Pennsylvania.

■ A trial court's determination of choice of law is a question of law and is reviewed de novo. *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 769 (Tex. App.-Corpus Christi 1999, pet. denied). Generally, the parties' contractual choice of law will be given effect if the contract bears a reasonable relationship to the chosen state and no countervailing public policy of the forum demands otherwise. *SAVA Gumarska in Kemijska Industria*

*D.D. v. Advanced Polymer Sciences, Inc.,* 128 S.W.3d 304, 314 (Tex.App.-Dallas 2004, no pet.). However, a preliminary motion must be filed asking the court to apply another state's laws. *Pittsburgh Corning,* 1 S.W.3d at 769 (citing *General Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 919–20 (Tex.1993)); *see also* Tex.R. Evid. 202. Absent a motion by a party, the law of Texas may be applied to a dispute. *Pittsburgh Corning,* 1 S.W.3d at 769. Also, in the absence of a request to take judicial notice or proper proof that the law of another state is applicable, Texas courts presume a sister state's laws are the same as Texas law. *Burns v. Resolution Trust Corp.,* 880 S.W.2d 149, 151 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Mathis v. Wachovia Bank and Trust Co., N.A.,* 583 S.W.2d 800, 802 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.).

■ The record does not contain a motion, written or verbal, requesting that the trial court apply the laws of the Commonwealth of Pennsylvania, providing it with a recitation of Pennsylvania law, or directing where it could find the relevant Pennsylvania law. Also, there is nothing in the record showing that either party advised the trial court that there was a choice of law issue or pointed out the distinctions between the laws of Pennsylvania and Texas regarding the matter in controversy.

There is only one reference to Pennsylvania law in the record. At the beginning of the trial, the parties discussed the Maryland judgment and counsel for Johnson stated, "Stone Street had an office that they were dealing with him here in Texas. And I was—it was my understanding they were in Pennsylvania. When I went back to look at the contract to see if [Johnson] had agreed to Maryland, it's not—there is a forum selection clause in there, but it's still a different state. I think Pennsylva-

nia." However, Johnson did not argue that the trial court should apply Pennsylvania law.

On appeal, Johnson argues in a single sentence that Pennsylvania law should apply, but refers this court to no case law on choice of law. Further, neither Johnson nor Structured Asset briefed Pennsylvania law. Instead, to support his first issue on appeal, Johnson relies exclusively on cases from the Eastern District of Pennsylvania, Kentucky, the District of Vermont, and Wisconsin.[9] Structured Asset responds to Johnson's first issue on appeal with a detailed analysis of an Oklahoma case as well as citing to Texas case law.[10] In support of his third issue on appeal, Johnson refers this court to a case from the District of Vermont, while Structured Asset cites to an Oklahoma case.[11]

As a result, we will assume that the trial court properly applied Texas law. *See Pittsburgh Corning*, 1 S.W.3d at 769.

### 2. Texas Law

■■■ The word "assignment" has a comprehensive meaning and in its most general sense means the transfer or setting over of property, or some right or interest. *University of Texas Medical Branch at Galveston v. Allan*, 777 S.W.2d 450, 452 (Tex.App.-Houston [14th Dist.] 1989, no writ). An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract. *Id.* at 453.

■■■ Anti-assignment clauses are enforceable unless rendered ineffective by a statute. *Reef v. Mills Novelty Co.*, 126 Tex. 380, 89 S.W.2d 210, 211 (1936); *see also Texas Development Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 879 (Tex.App.-Eastland 2003, no writ); *Texas Farmers Insurance Company v. Gerdes*, 880 S.W.2d 215, 218 (Tex.App.-Fort Worth 1994, writ denied); *Texas Pacific Indem. Co. v. Atlantic Richfield Co.*, 846 S.W.2d 580, 583 (Tex.App.-Houston [14th Dist.] 1993, writ denied). In the absence of a successful attack upon an anti-assignment clause, a party is entitled to have the trial court enforce it. *Texas Pacific Indem. Co.*, 846 S.W.2d at 583. A successful attack on an anti-assignment clause may be made through the application of contract law. *See generally Texas Development Co.*, 119 S.W.3d at 884; *University of Texas Medical Branch at Galveston*, 777 S.W.2d at 453.

### a. estoppel

■■■ Estoppel arises where one party has been induced to change his position for the worse because of the conduct of another party. *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex.1967). The doctrine of estoppel can only be invoked where the conduct of one of the parties has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct. *Id.* Estoppel by contract is a form of "quasi estoppel" based on the idea that a party to a contract will not be permitted to take a posi-

---

9. Johnson cites to *CGU Life Insurance Co. of America v. Metropolitan Mortg. & Securities Co., Inc.*, 131 F.Supp.2d 670 (E.D.Pa.2001), *J.G. Wentworth v. Jones*, 28 S.W.3d 309 (Ky. Ct.App.2000), *Grieve v. General American Life Insurance Co.*, 58 F.Supp.2d 319 (D.Vt.1999), and *J.G. Wentworth v. Callahan*, 256 Wis.2d 807, 649 N.W.2d 694 (2002).

10. Structured Asset cites and analyzes *In re Kaufman*, 37 P.3d 845 (Okla.2001) along with some Texas case law.

11. Johnson analyzes *Grieve*, 58 F.Supp.2d 319 and Structured Asset analyzes *Kaufman*, 37 P.3d 845.

tion inconsistent with its provisions, to the prejudice of another. *Stevens v. State Farm Fire and Casualty Co.*, 929 S.W.2d 665, 672 (Tex.App.-Texarkana 1996, writ denied); *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex.App.-Houston [14th Dist.] 1990, no writ); *Hawn v. Hawn*, 574 S.W.2d 883, 886 (Tex.App.-Eastland 1978, writ ref'd n.r.e.). The rule of estoppel by contract is not really one of estoppel, as estoppel in pais, rather it is just another way of saying that a party is bound by the terms of his contract unless it is void, annulled, or set aside in some way. *Stevens*, 929 S.W.2d at 672.

### b. waiver of contractual rights

■■■■■ Contractual rights can be waived. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 749 (Tex.App.-El Paso 2000, no pet.). A party can waive contract provisions that are in the contract for his benefit. *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex.App.-Corpus Christi 1986, no writ). A waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *In re Epic Holdings, Inc.*, 985 S.W.2d 41, 57 (Tex.1998); *Sun Exploration and Production Company v. Benton*, 728 S.W.2d 35, 37 (Tex.1987); *see also Texas Development Co.*, 119 S.W.3d at 884. Essentially, a waiver is unilateral in character; it results as a legal consequence from some act or conduct of the party against whom it operates; and no act of the party in whose favor it is made is necessary to complete it. *U.S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 358 (Tex.1971); *Massachusetts Bonding & Ins. Co.*, 416 S.W.2d at 401. A waiver does not need to be founded upon a new agreement, supported by consideration, or based upon estoppel. *U.S. Fidelity*, 464 S.W.2d at 358. However, a waiver presupposes full knowledge of an existing right. *Massa-*

*chusetts Bonding & Ins. Co.*, 416 S.W.2d at 401. In order to establish a waiver of rights under a contract, there must be proof of an intent to relinquish a known right. *Huffington v. Upchurch*, 532 S.W.2d 576, 580 (Tex.1976); *see also Abraxas*, 20 S.W.3d at 750. A party's express renunciation of a known right can establish a waiver. *Tenneco, Inc. v. Enterprise Products, Company*, 925 S.W.2d 640, 643 (Tex.1996); *see also Texas Development Co.*, 119 S.W.3d at 884. A party's silence or inaction for a period of time long enough to show an intention to yield the known right, is also enough to prove a waiver. *Tenneco, Inc.*, 925 S.W.2d at 643; *see also Texas Development Co.*, 119 S.W.3d at 884. An anti-assignment clause can be waived and the laws governing the waiver of contractual rights apply. *See generally Texas Development Co.*, 119 S.W.3d at 884; *University of Texas Medical Branch at Galveston*, 777 S.W.2d at 453.

### c. assignor cannot defeat rights of assignee

■■■■■ After making a valid assignment, an assignor loses all control over the *chose* and can do nothing to defeat the rights of the assignee. *University of Texas Medical Branch at Galveston*, 777 S.W.2d at 453. Once the assignee performs its obligations under the assignment and notice of the assignment is provided to the obligor, the assignment is irrevocable and the assignor does not have the authority to prejudice or defeat the assignee's rights under the assignment. *See id.* An assignor cannot urge estoppel or waiver against his assignee after making a valid assignment. *Id.*

### D. Application of the Law to the Facts

In his first issue on appeal, Johnson ·argues that the trial court erred in holding

that the anti-assignment provision in the Settlement Agreement is unenforceable. Specifically, Johnson argues that his assignment to Stone Street is unenforceable and void, or voidable based upon the anti-assignment language in the Settlement Agreement. Structured Asset argues that Johnson is estopped and waived his rights under the anti-assignment clause.[12]

Johnson does not challenge the trial court's Findings of Fact, but challenges its legal conclusions. *Linton*, 934 S.W.2d at 757. This court may review the trial court's conclusions from the facts found to determine their correctness. *Id.*

The trial court's unchallenged findings determined, in part, that:

(1) Johnson entered into a Periodic Payment Right Purchase Agreement with Stone Street Capital, Inc. dated on or about February 22, 1998;

(2) Under the terms of the Purchase Agreement, Johnson sold, assigned, transferred, and conveyed to Stone Street Capital, Inc. all of Johnson's right, title, and interest in and to certain structured settlement and annuity payments to which Johnson was entitled. Specifically, Johnson sold, assigned, transferred, and conveyed to Stone Street Capital, Inc. the following payments: forty-five (45) monthly payments of $2,500.00 each from March 1998 through November 2001; sixty (60) monthly payments of $3,000.00 each from December 2001 through November 2006; and fifty-one (51) monthly payments of $35,00.00 each from De-

cember 2006 through and including February 2011;

(3) Stone Street Capital, Inc. paid to Johnson the sum of $130,344 in connection with the closing transaction described in the Purchase Agreement;

(4) After the 1998 Transaction was closed and funded and after Johnson received the Purchase Price, Johnson honored, complied with, and performed under the Purchase Agreement for a period of time and several of the Periodic Payments were received by Stone Street Capital, Inc. and/or its successors and assigns;

(5) After the 1998 Transaction was closed and funded, Johnson did not object to or complain of the receipt of several monthly Periodic Payments by Stone Street Capital, Inc. and/or its successors and assigns;

(6) Johnson did not offer to rescind the contract and return the moneys paid to Johnson in connection with the Purchase Agreement and the 1998 Transaction until he filed his First Amended Answer in July of 2002, more than four (4) years after the Purchase Agreement was signed and the 1998 Transaction was closed and funded.

This court is bound by the trial court's Findings of Fact because they have not been challenged on appeal. *Hotel Partners*, 847 S.W.2d at 632; *Kershner*, 879 S.W.2d at 347–48.

Based upon the Findings of Fact, the trial court reached the following conclu-

---

**12.** Structured Asset also argued that the assignment to Equitable constituted a novation of the Settlement Agreement, including its anti-assignment language. The trial court's Conclusions of Law also state that the execution of the Equitable Assignment constituted a novation of the 1986 Settlement Agreement. This court does not need to address this argument to determine that the trial court correctly held that the anti-assignment provision is unenforceable in this case.

sions of law regarding the enforceability of the anti-assignment provision:

(1) Johnson waived any contractual provisions in the 1986 Settlement Agreement and other underlying settlement documents which purported to restrict his right to assign the Periodic Payments;

(2) Johnson is estopped from raising anti-assignment language in the underlying settlement documents as a defense in this case;

(3) Johnson ratified the terms of the Purchase Agreement and the 1998 Transaction after the Purchase Agreement was signed and after the 1998 Transaction was closed;

(4) Johnson had the capacity/standing to assign the Periodic Payments pursuant to the Purchase Agreement.

■ This court concludes that the trial court's Findings of Fact support its Conclusions of Law. Johnson entered into a contract with Stone Street assigning his rights to the monthly payments, preventing him from taking a position inconsistent with that assignment. *Stevens,* 929 S.W.2d at 672. Johnson expressly waived any contractual right he had to assert the anti-assignment provision of the Settlement Agreement by signing the Purchase Agreement, which contained a waiver of restrictions on assignability that states the following:

### WAIVER OF RESTRICTIONS ON ASSIGNABILITY

[Johnson] acknowledges that, to the extent that the Settlement Documents purport to contain any restriction on the assignability of the Periodic Payments or the Periodic Payment Rights, that such restriction was not intended to prevent [Johnson] from entering into and carrying out the terms of this Agreement. [Johnson] further acknowledges that any and all restrictions on the assignability of the Periodic Payments or the Periodic Payment Rights were included in the Settlement Documents for [Johnson's] benefit and not for the benefit or protection of any other person. For the benefit of [Stone Street], [Stone Street's] assigns, the Annuity issuer, the Owner and the Primary Obligor, or any Settlement Agreement Obligor, and on behalf of [Johnson] and [Johnson's] heirs, beneficiaries, executors, administrators, and legal representatives, [Johnson] hereby WAIVES AND RELEASES all rights and benefits of [Johnson] in, to, or under, any and all restrictions on assignability contained in the Settlement Documents. To the extent that any such restriction was included in order to assure [Johnson] of certain favorable tax treatment under Section 104(a)(2) of the Internal Revenue Code of 1986, as amended, [Johnson] acknowledges that [Johnson] is not relying on any representation or warranty from the [Stone Street] with respect to the tax effect or tax treatment of any payments made to [Johnson] hereunder, or the tax effect of any other element of the transactions contemplated by this Agreement. To the extent that any such restriction was included for any other purpose, [Johnson] acknowledges that [Johnson] is not relying upon any representation or warranty of the [Stone Street] with respect to the waiver contained herein. To the extent legally permissible, [Johnson] waives the benefit of any law requiring a court order to effectuate an assignment of the Periodic Payments or the Periodic Payment Rights.

*See Tenneco, Inc.,* 925 S.W.2d at 643. In addition, Johnson's intention to yield or waive his rights under the anti-assignment provision is demonstrated by his silence or failure to object to Stone Street's receipt

of the monthly payments for approximately eleven months. *Texas Development Co.,* 119 S.W.3d at 884. Once Stone Street performed its obligations under the assignment by paying Johnson $130,344 and offsetting the remaining $2,500 Johnson had received, and Johnson sent the letter to Equitable requesting a change in the beneficiary and showing Stone Street's lock box as the return address, the assignment became irrevocable and Johnson no longer had the authority to prejudice or defeat Stone Street's or its assignee's rights under the assignment. *University of Texas Medical Branch at Galveston,* 777 S.W.2d at 453.[13]

Johnson's first issue on appeal is overruled.

## III. AWARD OF INTERPLEADED FUNDS

In his second issue on appeal, Johnson argues that the trial court erred in awarding all of the periodic payments to Structured Asset because only a portion of each such payment had been assigned and because there is no evidence to support an award of all the periodic monthly payments. Structured Asset argues that the award of the payments and moneys on deposit with the trial court was supported by the evidence and, therefore, proper.

### A. Inadequate Briefing

■ Texas Rule of Appellate Procedure 38.1(h) requires appellate briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Points of error are waived if an appellant fails to support his contention by citations to appropriate authority, or cites only to a single non-controlling case. *Wolfe v.*

*C.S.P.H., Inc.,* 24 S.W.3d 641, 647 (Tex. App.-Dallas 2000, no pet.); *see also Tong v. State,* 25 S.W.3d 707, 710 (Tex.Crim. App.2000), *cert. denied* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001). This rule does not prohibit an appellant from making a novel argument for which there is no authority "directly on point." However, a novel contention must be grounded in analogous case law or provide a relevant jurisprudential framework for evaluating the claim. *See Tong,* 25 S.W.3d at 710.

### B. Application of the Law to the Facts

■ Johnson has failed to present a clear and concise argument with appropriate citations to authority to support his second issue on appeal, that the trial court erred in awarding all of the periodic monthly payments to Structured Asset because there was no evidence to support the award. Also, Johnson fails to support his contention in analogous case law or provide the relevant jurisprudential framework for evaluating his claim. *Tong,* 25 S.W.3d at 710. Therefore, Johnson's second point of error is inadequately briefed and is waived. Tex.R.App. P. 38.1(h).

■ Nevertheless, even if Johnson's second issue was not waived, when considering a no-evidence challenge, the appellate court must view the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *see also Anthony Equipment Corp. v. Irwin Steel Erectors, Inc.,* 115 S.W.3d 191, 204 (Tex.App.-Dallas 2003, pet. dism'd); *Kershner,* 879 S.W.2d at 346. If more than a scintilla of evidence supports the

---

13. We note that the Texas Structured Settlement Act, Tex. Civ. Prac. Rem.Code Tex. Civ. Prac. & Rem.Code Ann. § 141.001–007 (Vernon Supp.2004–05), does not apply here because it was enacted after the date of the assignment.

challenged finding, the no-evidence challenge must fail. *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003). In an interpleader action, each party making a claim to the funds at issue bears the burden of establishing his right to the funds. *McBryde v. Curry,* 914 S.W.2d 616, 620 (Tex.App.-Texarkana 1995, writ denied). The record shows that contrary to Johnson's claims, the trial court only awarded Structured Asset the money deposited in the registry of the court and the right to receive monthly payments pursuant to the terms of its agreement with Johnson as follows:

(1) $3,000 per month from August 19, 2002 to November 2006 (fifty-two months); and

(2) $3,500 per month from December 2006 to February 2011 (fifty-one months).

These amounts are $500 per month less than the monthly payments due under the structured settlement agreement, consistent with the terms of Johnson's assignment to Stone Street. Further, the record shows that the trial court may have offset Johnson's portion of the money deposited in the registry of the court, approximately $11,000, by the amount of the monthly payments belonging to Structured Asset, which he had previously diverted to himself, approximately $10,000. Therefore, we conclude that Johnson's second issue is also without merit because the trial court did not award all of the periodic payments to Structured Asset.

Johnson's second issue on appeal is overruled.

## IV. PUBLIC POLICY

In his third issue on appeal, Johnson argues that the trial court erred by entering conclusions of law that the transaction between Johnson and Stone Street subsequently assigned to Settlement Trust and serviced by Structured Asset "did not violate public policy" and "was not barred by public policy." Specifically, Johnson argues that the assignment is contrary to the public policy embodied in the Internal Revenue Code, 26 U.S.C.A. § 104(a)(2) (West 2003) and state statutes,[14] even though these statutes were enacted after he assigned his structured settlement payments. Structured Asset argues that the assignment is not against public policy, does not violate any statute, and is not immoral or wrong.

### A. Standard of Review

Review of whether a contract violates public policy is a question of law, which is reviewed de novo. *Ranger Ins. Co. v. Ward,* 107 S.W.3d 820, 827 (Tex. App.-Texarkana 2003, pet. denied). In addition, review of a claim that a contract is against public policy should be approached with caution. *Hirsch v. Texas Lawyers' Ins. Exchange,* 808 S.W.2d 561, 564 (Tex. App.-El Paso 1991, writ denied). The rule that public policy precludes the enforcement of an otherwise valid contract should be applied cautiously and only in cases involving dominant public interests. *Id.; Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 924 (Tex.App.-Fort Worth 1988, writ denied). *Accord Bank One v. Prudential Ins. Co.,* 878 F.Supp. 943, 966 (N.D.Tex. 1995); *Fidelity Deposit Co. v. Conner,* 973 F.2d 1236, 1241 (5th Cir.1992).

### B. Applicable Law

Contracts are subject to the public policy of the State. *Ranger Ins. Co.,* 107 S.W.3d at 827. In examining an agreement to determine if it is contrary to

---

**14.** As previously noted, Texas has enacted the Structured Settlement Protection Act, Tex. Civ. Prac. Rem.Code Ann. § 141.001–007 (Vernon Supp.2004–05).

public policy, we look to whether the agreement has a tendency to injure the public good. *Id.* A state's public policy is embodied in its constitution, statutes, and the decisions of its courts. *Texas Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240, 250 (Tex.2003); *Churchill Forge, Inc. v. Brown,* 61 S.W.3d 368, 373 (Tex.2001); *Ranger Ins. Co.,* 107 S.W.3d at 827.

### a. Statutes

The Internal Revenue Code and the Texas Settlement Protection Act regulate the transfer of structured settlement payments.

The Internal Revenue Code imposes a tax equal to forty percent of the factoring discount on anyone who acquires structured settlement payment rights in a structured settlement factoring transaction. 26 U.S.C.A. § 5891 (West 2004). The tax does not apply if the transfer of the structured settlement payments was approved by a judgment, final order, or decree issued by a state court under the applicable state statute. *See id.* With the exception of § 5891(d), this section applies to transactions entered into on or after January 30, 2002. Act of Jan. 23, 2002, P.L. 107–134, § 115(c)(1), 115 Stat. 2436–39, 2438 (2001). Section 5891(d)(1) provides a tax clarification provision that is to be applied prospectively and retroactively [15] to structured factoring transactions stating that:

> [i]f the applicable requirements of sections 72, 104(a)(1), 104(a)(2), 130, and 461(h) were satisfied at the time the structured settlement involving structured settlement payment rights was entered into, the subsequent occurrence of a structured settlement factoring transaction shall not affect the application of the provisions of such sections to the parties to the structured settlement (in-

cluding an assignee under a qualified assignment under section 130) in any taxable year.

26 U.S.C.A. § 5891(d)(1).

The Texas Structured Settlement Protection Act requires the factoring company to provide the recipient of the structured settlement payments with disclosures prior to entering into a transfer agreement and requires court approval before it is effective. TEX. CIV. PRAC. REM.CODE ANN. § 141.001–007 (Vernon Supp.2004–05). The Texas Structured Settlement Protection Act applies only to the transfer of structured settlement payments under a transfer agreement entered into on or after September 1, 2001. Act of Apr. 5, 2001, 77th Leg., R.S., ch. 96 § 3, 2001 Tex. Gen. Laws 173, 177. Further, the Texas Structured Settlement Protection Act may not be construed to imply that any transfer under a transfer agreement entered into before September 1, 2001, is valid or invalid. TEX. CIV. PRAC. REM.CODE ANN. § 141.007(e).

### b. Decisions of Texas Courts

 While there is no standard definition or test that applies to all cases, courts generally find a contract violates public policy if it is illegal, or inconsistent with or contrary to the best interest of the public. *Ranger Ins. Co.,* 107 S.W.3d at 827.

 An assignment may be invalidated by the courts if it is found to offend public policy. *Coronado Paint Co., Inc. v. Global Drywall Systems, Inc.,* 47 S.W.3d 28, 31 (Tex.App.-Corpus Christi 2001, pet. denied), *review denied as improvidently granted* 104 S.W.3d 538 (2003). The Texas Supreme Court has held that certain types of assignments are invalid because they violate public policy: (1) an assignment of

**15.** *See* Act of Jan. 23, 2002, P.L. 107–134, § 115(c)(2), 115 Stat. 2436–39, 2438 (2001).

a cause of action that works to collude against an insurance carrier; (2) an assignment of a legal malpractice claim; (3) an assignment that creates a Mary Carter agreement; (4) an assignment of the plaintiff's cause of action to a joint tortfeasor of the defendant; and (5) an assignment of interests in an estate that distorts the true positions of the beneficiaries. *Id.* However, a contract regarding the rights and obligations of the parties, which also contains a waiver, does not contravene public policy if the waiver is not against any legislatively created public policy. *See Wolfe*, 24 S.W.3d at 645.

### C. Application of the Law to the Facts

Johnson's assignment to Stone Street is not one of the types of assignments determined by the Texas Supreme Court to violate public policy. *Coronado Paint Co., Inc.*, 47 S.W.3d at 31. Accordingly, we look to whether his assignment of his structured settlement payments is against the public policy embodied in Texas' statutes.

Because the underlying purpose of a structured settlement is not only to compensate an injured party, but also to protect that party from his own improvidence, a number of commentators, courts, and legislatures have become concerned by the growing number of companies, sometimes called "factoring companies," that purchase structured settlements from a personal injury victim by paying him immediate cash for the right to future payments under the settlement. *In re Granati*, 270 B.R. 575, 589 (Bankr.E.D.Va.2001)(citing Leo Andrada, Note, *Structured Settlements: The Assignability Problem*, 9 S.Cal. Interdisciplinary L.J. 465, 465 (2000)) *affirmed* 307 B.R. 827 (E.D.Va. 2002) *affirmed* 63 Fed.Appx. 741 (4th Cir. 2003)(not selected for publication in the Federal Reporter). In response to these concerns, the federal government [16] and 38 states, including Texas,[17] have enacted

---

16. 26 U.S.C.A. § 5891 (West 2003).

17. *See* Tex. Civ. Prac. Rem.Code Ann. § 141.001–007 (Vernon Supp.2004–05); Alaska Stat. §§ 09.60.200 to 09.60.230 (Michie Supp.2003); Ariz.Rev.Stat. Ann. § 12–2901 to –2904 (West 2003); Cal. Ins.Code §§ 10134–20239.5 (West Supp.2004); Colo. Rev.Stat. Ann. §§ 13–23–101 to 13–23–108 (West Supp.2003); Conn. Gen.Stat. Ann. § 52–225f (West 2003); Del.Code Ann. tit. 10, §§ 6601–6604 (Supp.2002); Fla. Stat. Ann. § 626.99296 (West 2004); Ga.Code Ann. §§ 51–12–70 to –77 (Harrison Supp.2002); Idaho Code § 28–9–109 (Michie Supp.2004); 215 Ill. Comp. Stat. Ann. 153/1–153/35 (West Supp.2004); Ind.Code Ann. §§ 34–50–2–1 to –2–11 (Michie Supp.2004); Iowa Code Ann. §§ 682.1–682.7 (West Supp.2004); Ky.Rev. Stat. Ann. §§ 454.430, 454.431, 454.435 (Michie 1999); La.Rev.Stat. Ann. § 9:2715 (West Supp.2004); Me.Rev.Stat. Ann. §§ 2241–46 (West 2000); Md.Code Ann., Cts. & Jud. Proc. §§ 5–1101 to –1105 (2002); Mass. Gen. Laws Ann. ch.231C §§ 1–5 (Law.Co-op.Supp.2003); Mich. Comp. Laws Ann. §§ 691.1191 to 691.1197 (West Supp.2004); Minn.Stat. Ann. §§ 549.30 to 549.34 (West 2000 and Supp.

2004); Miss.Code Ann. §§ 11–57–1 to 11–57–15 (Supp.2003); Mo. Ann. Stat. §§ 407.1060 to 407.1068 (West 2001); Neb.Rev Stat. Ann. §§ 25–3101 to 25–3107 (Michie Supp.2002); Nev.Rev.Stat. Ann. 42.030 (Michie Supp.2003); N.J. Stat. Ann. §§ 2A:16–63 to 2A:16–69 (West Supp.2004); N.Y. Gen. Oblig. Law §§ 5–1701 to 5–1709 (McKinney Supp.2004); N.C. Gen. Stat. Ann. §§ 1–543.10 to 1–543.15 (2003); Ohio Rev.Code Ann. §§ 2323.58 to 2323.587 (Anderson 2001 and Supp.2003); Okla. Stat. Ann. tit. 12, §§ 3238–3245 (West Supp.2004); 40 Pa. Cons.Stat. Ann. §§ 4001–4009 (West Supp.2004); R.I. Gen Laws §§ 27–9.3–1 to 27–9.3–7 (2002); @S.C.Code Ann. §§ 15–50–10 to 15–50–70 (Law Co-op. Supp.2003); S.D. Codified Laws §§ 21–3B–1 to 27–3B–12 (Michie 2004); Tenn.Code Ann. §§ 47–18–2601 to 47–18–2607 (2001); Utah Code Ann §§ 78–59–101 to 78–59–108 (2002); Va.Code Ann. §§ 59.1–475 to 59.1–477.1 (Michie 2001); Wash. Rev.Code Ann. §§ 19.205.010 to 19.205.900 (West Supp.2004); W.Va.Code Ann. §§ 46A–6H–1 to 46A–6H–8 (Michie 1999); *see also In re Chorney*, 277 B.R. 477, 490 (Bankr.W.D.N.Y.2002)(a number of states have enacted legislation which would allow

statutes regulating the transfer of structured settlement payments. These statutes promote the underlying policy of encouraging structured settlements; while also acknowledging that there are times when the recipient, for good reason, should have access to all or a portion of the structured settlement payments before they are due. *See In re Chorney,* 277 B.R. 477, 490 (Bankr.W.D.N.Y.2002). It appears that the various legislatures have determined that the solution is not to prohibit the assignment of structured settlement payments, but to require certain precautionary mechanisms that will safeguard recipients from possible abuse by factoring companies. *See Settlement Funding, LLC. v. Jamestown Life Ins. Co.,* 78 F.Supp.2d 1349, 1364 (N.D.Ga.1999).

The Texas Structured Settlement Protection Act is a paternalistic statute: it requires disclosures and court approval before any transfer of structured settlement payment rights. *See In re Transfer of Structured Settlement Rights by Spinelli,* 353 N.J.Super. 459, 803 A.2d 172, 177–78 (2002)(commenting that a similar New Jersey statute imposes a paternalistic function). This prospective statute is not determinative of this appeal because it was enacted after Johnson assigned his structured settlement payments to Stone Street and may not be construed to imply that any transfer of structured settlement payments under a transfer agreement entered into before September 1, 2001, is valid or invalid. *See* Act of Apr. 5, 2001, 77th Leg., R.S., ch. 96 § 3, 2001 Tex. Gen. Laws at 177. However, we are mindful of the public purpose and philosophy underlying the statute: to protect the recipients of structured settlement payments who are in

need of cash from exploitation by factoring companies. *See Spinelli,* 353 N.J.Super. at 465; *J.G. Wentworth v. Jones,* 28 S.W.3d 309 (Ky.Ct.App.2000). Accordingly, we look to the decisions of federal and other state courts regarding the public policy surrounding the transfer of structured settlement payments.

Since the federal government's enactment of § 5891 of the Internal Revenue Code and the 38 states' enactment of structured settlement protection acts, our research indicates that ten federal and state courts have reviewed whether the assignment of structured settlement payments is against public policy.

Four federal courts considered the public policy relating to the assignment of structured settlement payments. Of these four federal courts, two bankruptcy courts and one district court have held that the assignment of structured settlement payments is not against public policy, while the Ninth Circuit held that it is. *See In re Chorney,* 277 B.R. at 490; *In re Granati,* 270 B.R. at 589–90; *Settlement Funding,* 78 F.Supp.2d at 1364; *Short v. Singer Asset Finance Company, LLC,* 107 Fed. Appx. 738 (9th Cir. 2004)(not selected for publication in the Federal Reporter).

The Bankruptcy Court for the Western District of New York determined that these transactions were not against public policy in general. *In re Chorney,* 277 B.R. at 490. Looking to the state laws of Virginia and Pennsylvania, the Bankruptcy Court for the Eastern District of Virginia determined that there were no reported decisions in either state holding that a transfer of structured settlement payments is contrary to public policy. *In re Granati,* 270 B.R. at 589–90. Similarly,

recipients of structured settlement payments to obtain loans against all or a portion of the payments not yet due when the reasons for the loan and terms of the loan are approved

by a court); *In re Granati,* 270 B.R. at 589 (commenting in a 2001 opinion that twelve states have enacted statutes regulating the transfer of structured settlement payments).

the District Court for the Northern District of Georgia concluded that the assignment of structured settlement payments was not prohibited by public policy because neither the Virginia nor Georgia structured settlement protection acts completely prohibited the assignment of structured settlement payments. *Settlement Funding,* 78 F.Supp.2d at 1364.

In contrast, the Ninth Circuit held that there is a uniform public policy against the assignment of structured settlement payments after noting the recent federal and Idaho statutory measures designed to deter factoring transactions. *Short,* 107 Fed. Appx. at 740. However, the dissent commented that Idaho also has a public policy interest in not permitting a recipient to keep the money received from the factoring company, while simultaneously avoiding his contractual obligations. *Short,* 107 Fed.Appx. at 742 (J., Callahan, dissenting).

Six state courts have considered the public policy relating to the assignment of structured settlement payments. Of these six state courts, Oklahoma and Florida determined that the assignment of structured settlement payments is not against public policy, New Jersey recognized the state's policy favoring the freedom to make assignments, Kentucky held that it is against public policy, and Wisconsin and Georgia declined to address the issue. *See In re Kaufman,* 37 P.3d 845 (Okla.2001); *State Farm Life Ins. Co. v. Florida Asset Financing Corp.,* 786 So.2d 1 (Fla.Dist.Ct. App.2000); *Jones,* 28 S.W.3d 309; *J.G. Wentworth v. Callahan,* 256 Wis.2d 807, 649 N.W.2d 694 (2002); *CGU Life Insurance Co. v. Singer Asset Finance Co., LLC,* 250 Ga.App. 516, 553 S.E.2d 8 (2001).

The Supreme Court of Oklahoma noted that there is a public policy question regarding the assignment of structured settlements made before the effective date of the Oklahoma Structured Settlement Act.

*Kaufman,* 37 P.3d at 854. However, it went on to state that based on the Oklahoma legislature's requirement that no implications be drawn on the validity of agreements to assign structured settlement payments entered into before the enactment of the Oklahoma Structured Settlement Act, it will not void the agreement on the public policy principles that underlay the statutory scheme. *Id.* The Fourth District Court of Appeals of Florida held that a tort victim's poor financial decision to assign his structured settlement payments for a severely discounted lump sum payment did not justify setting aside the assignment on public policy grounds. *See State Farm,* 786 So.2d at 3. *Jones,* 28 S.W.3d at 313. The Superior Court of New Jersey, did not decide the public policy issue. *See Spinelli,* 803 A.2d at 177–78. However, following its statutory approval process, the New Jersey Superior Court reviewed a proposed transfer of structured settlement payments, approved the transfer, and stated that it is because of situations where a recipient of a structured settlement "may [need] to muster assets in a way not [originally] contemplated . . . . that a state [also] has a compelling interest in securing the [recipient's] freedom to do so." *Id.*

The Kentucky Court of Appeals held that a factoring company's attempts to enforce tort victims' assignments of their structured settlement payments failed based, in part, on public policy considerations. *See Jones,* 28 S.W.3d 309. This determination was based on the Kentucky court's conclusion that agreements to assign structured settlement payments were of a unique character and distinguishable from all other species of contracts. *Id.* at 313. However, the Kentucky court ultimately did not enforce the assignments based on its conclusion that the agreements assigning the structured settlement

payments were illusory because the assignor did not own an interest in the annuity. *Id.* at 314.

Both Wisconsin and Georgia have declined to address the public policy issue relating to the assignment of structured settlement payments. The Court of Appeals for Wisconsin declined to address the public policy issue, but discussed the Kentucky Court of Appeals opinion in *J.G. Wentworth v. Jones* and noted the concerns of the Illinois legislature that these assignments could leave the intended recipient of the structured settlement payments penniless and without resources in the future. *See Callahan,* 649 N.W.2d at 701 n. 3. Similarly, the Court of Appeals of Georgia declined to address the public policy issue, instead affirming the trial court's finding that the Georgia Legislature had not established a public policy either disfavoring or favoring the assignability of payments under a structured settlement. *CGU Life,* 553 S.E.2d at 14.

 We agree with the majority of the courts that the assignment of structured settlement payments is not against public policy. As a result, we conclude that Johnson's transfer of his right to receive structured settlement payments was not against any legislatively created public policy or prohibited by the decisions of the Texas courts. *See Wolfe,* 24 S.W.3d at 645.

Johnson's third issue on appeal is overruled.

## VI. CONCLUSION

This court concludes that the trial court did not err when it determined that Johnson waived the anti-assignment provision in the settlement agreement and that he was estopped from raising the anti-assignment clause as a defense. This court also concludes that Johnson's complaint that the trial court erred in awarding all of the periodic payments to Structured Asset because there was no evidence supporting such an award was inadequately briefed, is waived, and is without merit because the trial court did not award all of the periodic payments to Structured Asset. Further, this court concludes that the transaction between Johnson and Stone Street, which was subsequently assigned to Settlement Trust and is serviced by Structured Asset, does not violate public policy.

The trial court's judgment is affirmed. TEX.R.APP. P. 43.2(a).