TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00578-CV






Robert H. Osburn, P.C., Appellant


v.


Realty Engineering, Inc., Appellee






FROM COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY

NO. 2007CV0590, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Robert H. Osburn appeals the judgment of the county court at law awarding damages
for breach of contract to Realty Engineering, Inc., and determining that Osburn take nothing from
Realty on his negligence claim. On appeal, Osburn contends that Realty's engineering license was
suspended at the time the contract was signed, rendering the contract void as against public policy,
illegal, and unenforceable. He also contends that the judgment as to his negligence claim was
against the great weight and preponderance of the evidence. We affirm.

 The parties entered a contract for Realty to provide expert witness services
in a lawsuit concerning a structure at an apartment building. The parties agree that the
contract--signed by Osburn and Norman Cooper, Realty's sole stockholder--was signed sometime
in early February 2005. Cooper inspected the property on February 25, 2005, issued his report on
May 26, 2005, and testified at his deposition on August 15-16, 2005. Cooper testified that the
building inspector for the City of Bedford told him that the Uniform Building Code applied at
the time of construction. He did not obtain written materials from the City before his deposition,
but did obtain them afterwards. He then learned that the Standard Building Code was in effect at
the time of construction. Cooper admitted that he could have made the request for written materials
before he wrote his report or testified at his deposition. Cooper testified that he did not supplement
his report after his deposition because his client--Osburn--did not authorize him to do that. Cooper
testified, however, that his misunderstanding of what code was in effect when the building was
built made no difference because (1) the code that is in effect at the date of injury is the applicable
code and (2) the Standard and Uniform codes had the same relevant standard for the engineering
issue in dispute.

 Osburn testified that, when he learned that the wrong code was identified in the
report, he knew that Cooper would be impeachable on the witness stand. Even though Cooper felt
he could explain away the misidentified code, Osburn decided to get a new expert in a case he
described as hotly contested. Osburn testified that he hired an architect as an expert and paid him
$15,000. The case for which both experts were hired settled on the eve of trial.

 Osburn noted that his decision to seek a new expert was reinforced when he learned
from opposing counsel that Cooper was not "a registered engineer in his firm." Osburn contends that
Realty's engineering license fee was not timely paid by January 31, 2005, and that this renders any
contract for engineering services entered into by Realty void. Osburn sought on cross-examination
for Cooper to admit that, from January 31 to March 23, 2005, Cooper was not a licensed professional
engineer. Cooper refused. He conceded that Realty paid a $500 administrative penalty to the State
because it had not properly paid a fee that was due. Cooper testified, "What I remember is that this
never was a question of my engineering from my personal license as an engineer and my practice as
an engineer and as an individual. This was only for the corporation's license with the state." Cooper
testified that he was not informed that Realty's license was revoked or suspended, only that he had
to pay a $500 fine to get it renewed.

 Osburn asked Cooper to waive his fees because of the code misidentification. Osburn
paid Realty for Cooper's services from February through August 2005. Cooper sued for the
remainder of the contracted fee and prevailed. Osburn appeals.

 Osburn does not dispute that he entered a contract with Realty, but argues that
the contract should not be enforced. He contends that, because Realty failed to timely pay its
engineering license fee before the contract was signed, the trial court should have refused to enforce
the contract as illegal or against public policy. Osburn's argument is an affirmative defense for
which he bore the burden of proof. Review of whether a contract violates public policy is a question
of law, which is reviewed de novo. Johnson v. Structured Asset Servs., LLC, 148 S.W.3d 711, 726
(Tex. App.--Dallas 2004, no pet.). The rule that public policy precludes the enforcement of an
otherwise valid contract should be applied cautiously and only in cases involving dominant public
interests. Id.; Yancey v. Floyd West & Co., 755 S.W.2d 914, 924 (Tex. App.--Fort Worth 1988,
writ denied). Contracts are subject to the public policy of the State. Johnson, 148 S.W.3d at 726.
A state's public policy is embodied in its constitution, statutes, and the decisions of its courts. Id.
at 727; Texas Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 250 (Tex. 2003). In examining an
agreement to determine if it is contrary to public policy, we look to whether the agreement has a
tendency to injure the public good. Johnson, 148 S.W.3d at 726-27.

 Osburn failed to put on evidence that requires a conclusion that the contract was void.
Osburn asserts that Realty violated the occupations code provisions setting out the procedure by
which persons licensed as professional engineers are to renew their licenses. See Tex. Occ. Code
Ann. § 1001.353 (West Supp. 2009). It is not clear that section 1001.353 applies to corporations. 
It applies to "persons" who have an engineering license. Id. Although corporations are deemed
persons for some purposes, we are not persuaded a corporation can fulfill the licensing requirements
that include the following: graduating from an approved engineering curriculum or recognized
institution of higher learning, passing an examination (or having the requirement waived), engaging
in the active practice of engineering for a specified period, having a completed application approved,
and paying required fees. See id. §§ 1001.302-.305, .308 (West 2004). The only evidence is that
Cooper, the expert witness whose services Realty provided, was a licensed engineer during
the entirety of the contract. Cooper conceded that Realty had paid a fine for late payment of a fee,
but Osburn did not and does not present authority compelling a conclusion that a late payment of
this unspecified fee voids any contract Realty entered while the fee remained unpaid. (1) There is no
documentary evidence in the record regarding a late-paid fee or a suspended or expired license
or registration for either Cooper or Realty. Whatever fee was late, it was undisputedly paid by
March 23, 2005, well before Cooper performed the expert witness services of filing his expert report
in May 2005 and testifying at his August 2005 deposition. Osburn has not demonstrated that the
contract to supply an expert witness was rendered void, illegal, or against public policy by the late
payment of an unspecified fee. He has not shown that the trial court erred by granting judgment to
Realty for breach of contract.

 Osburn contends that the trial court's judgment on his negligence claim was against
the great weight and preponderance of the evidence. When a party attacks the factual sufficiency of
an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal
that the adverse finding is against the great weight and preponderance of the evidence. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). To recover on a negligence theory, Osburn must
establish the existence of a duty, a breach of that duty, and damages proximately caused by the
breach. Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005). The trial court did not
specify on what basis it denied the negligence claim. Osburn cites Cooper's admission that he relied
on an oral representation by the City of Bedford's building inspector that the Uniform Building Code
applied to the apartments' construction and that he did not obtain written materials or do other
research to determine the applicable building code before writing his report or testifying at
deposition. It was eventually discovered that the Standard Building Code applied. Osburn testified
that errors in expert reports are serious and that Cooper's actions made him impeachable on the
witness stand. Consequently, Osburn chose to hire a new expert for $15,000 to redo Cooper's work.

 The trial court's judgment is supported by an implied finding that Cooper's failure
to get written confirmation of the applicable building code did not proximately cause Osburn's
damages. That implied finding is supported by Cooper's testimony that his error regarding the
applicable building code was (1) explainable, due to his reliance on the City of Bedford's building
inspector, (2) rectifiable, through amendment of the report, and (3) inconsequential, given the
similarities of the building codes. Cooper testified that he offered, but was not authorized by
Osburn, to update his report to use the correct building code. Osburn's testimony regarding the
serious nature of errors in expert reports and his decision to hire a new expert does not constitute a
great weight or preponderance of evidence in favor of a negligence finding. We conclude that the
trial court's judgment that Osburn take nothing by his negligence claim is not against the great
weight and preponderance of the evidence.

 Affirmed.



 

 G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: August 6, 2010
1. There is a separate registration requirement for business entities engaging in the practice
of engineering. See Tex. Occ. Code Ann. § 1001.405 (West 2004). Although it is not clear what
the effect of a late payment is on the ability to form a contract, that statute and theory is not cited or
relied on by Osburn and cannot form the basis for reversal. See Tex. R. App. P. 33.1(a)(1), 38.6(i).