Opinion issued December 18, 2008
















In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00137-CV




TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY AND
TRANSAMERICA ANNUITY SERVICE CORPOATION, Appellants

V.

RAPID SETTLEMENTS, LTD. AND RAYMOND ECHOLS, Appellees




On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 870027


 

OPINION ON REHEARING

 

We grant rehearing and withdraw our opinion and judgment of July 3, 2008,
and issue the following in their stead. We dismiss Rapid Settlements’ motion for en
banc rehearing as moot. Our disposition of the case remains unchanged. 
Transamerica Occidental Life Insurance Company and Transamerica Annuity
Service Corporation (collectively, Transamerica) bring a restricted appeal from the
trial court’s final judgment confirming an arbitration award in favor of appellee Rapid
Settlements. Transamerica contends that it never received notice of Rapid
Settlements’ suit, nor consented to the judgment, and that the trial court further erred
by entering the order to aid in the enforcement of judgment because: (1) the arbitrator
exceeded his authority in making the award; (2) the agreement between Rapid
Settlements and appellee Raymond Echols


 is invalid and unenforceable; (3) the trial
court lacks subject matter jurisdiction over Rapid Settlements’ claim; and (4) the
judgment contains various findings of fact and conclusions of law not supported by
the record. We conclude that the trial court has subject matter jurisdiction over this
dispute. We further conclude that, because Transamerica is a nonsignatory to the
agreement to arbitrate, it is unenforceable against it. We therefore reverse and render
judgment that Rapid Settlements take nothing against Transamerica on its claim for
enforcement. 
Background
In 1988, Echols settled a personal injury action in exchange for the right to
receive a $100,000.00 structured settlement payment in 2027. The Transamerica
entities serve as annuity insurer and annuity obligor of this structured settlement
agreement. In 2005, Echols and Rapid Settlements entered into a transfer agreement
which provided that Rapid Settlements would pay Echols a lump sum of $5,000.00
in exchange for his right to the future payment under the structured settlement
agreement. The transfer agreement dictates that all disputes arising under it be
resolved by an arbitrator under Texas law. Rapid Settlements claims that Echols, who
lives in Tennessee, attempted to cancel the transfer. Rapid Settlements instituted an
arbitration proceeding in Texas against Echols, asserting breach of the transfer
agreement. In July 2006, the arbitrator entered an agreed award in favor of Rapid
Settlements. The arbitrator’s award approves the transfer of the $100,000.00
structured settlement payment, and awards Rapid Settlements $375.00 in arbitration
fees. Transamerica did not participate in the arbitration proceedings. The award
nevertheless ordered Transamerica to change the designated payee under the annuity
to an entity designated by Rapid Settlements, and to send formal acknowledgment of
the transfer within seven days after Transamerica’s receipt of a judgment confirming
the award. 
Rapid Settlements then filed an “Original Petition for Confirmation of
Arbitration Award” in Harris County Civil Court at Law Number 1. The petition
names Echols as the sole defendant. Transamerica was neither named as a party nor
served with notice of the suit. Following a hearing,


 the trial court signed a final
judgment confirming the arbitration award. The judgment orders
that [Echols] and [Transamerica] are hereby directed to deliver and make
payable to [Rapid Settlements], its successors and/or assigns, as they
become due, the following payments under the Annuity Contract No.
872191TOO3Z with Echols:
 
One (1) lump sum payment in the amount of $100,000 due and payable
on December 17, 2027 . . . as such become due. 
 
The judgment further orders that, as payment for its arbitration fees,Rapid
Settlements was to “hold back and retain $375” from the amount total Echols was
otherwise due to receive under the transfer agreement. Within six months,
Transamerica noticed its restricted appeal from this judgment.
 

DiscussionI.       Subject Matter Jurisdiction
As a threshold matter, we address Transamerica’s contention that the amount
in controversy exceeds the limits of the court’s jurisdiction and thus requires
dismissal of the cause. Subject matter jurisdiction is essential for a court to have the
authority to resolve a case. French v. Moore, 169 S.W.3d 1, 6 (Tex. App.—Houston
[1st Dist.] 2004, no pet.) (citing Tex. Ass’n of Bus.v. Tex. Air Control Bd., 852 S.W.2d
440, 443 (Tex. 1993)). Whether a court has subject matter jurisdiction is a question
of law that we review de novo. Id. (citing Mayhew v. Town of Sunnyvale, 964 S.W.2d
922, 928 (Tex. 1998)). We look to the allegations in the plaintiff’s petition in
determining the amount in controversy for jurisdictional purposes. See id. (citing
Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 449 (Tex. 1996)); see also
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000) (stating that amount
in controversy “must ordinarily be decided solely on the pleadings”). We must
presume that the trial court has subject matter jurisdiction unless the absence of
jurisdiction affirmatively appears on the face of the petition. French, 169 S.W.3d at
6. Normally, the plaintiff’s pleadings determine the amount in controversy, except
when the defendant alleges that the amount pleaded by the plaintiff is a sham to
wrongfully obtain jurisdiction. Id. (citing Bland, 34 S.W.3d at 554); see also United
Servs. Auto. Ass’n v. Brite, 215 S.W.3d 400, 402 (Tex. 2007) (“We have previously
held that the amount in controversy is determined by the amount the plaintiff seeks
to recover.”). If a plaintiff fails to state an amount in controversy in its petition, the
trial court is not automatically deprived of subject matter jurisdiction. French, 169
S.W.3d at 6–7 (citing Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989)). 
Rather, a plaintiff may prove jurisdiction at trial. Id. at 7 (citing Peek, 779 S.W.2d
at 804).
Sections 25.0003 and 25.1032 of the Texas Government Code grant
jurisdiction to statutory county courts and to the Harris County Civil Courts at Law. 
See Tex. Gov’t Code Ann. § 25.0003 (Vernon 2004 & Supp. 2007); see also
Cazarez, 937 S.W.2d at 447–49. The jurisdictional limit of the Harris County Civil
Courts at Law is more than $500 but less than $100,000, excluding interest, statutory
or punitive damages, penalties, attorney’s fees, and costs. Tex. Gov’t Code Ann.
§§ 25.0003(c)(1),  25.1032(a); see also Smith v. Clary Corp., 917 S.W.2d 796, 798
(Tex. 1996) (stating general jurisdictional rule, and noting that “many exceptions”
exist).
Rapid Settlements’ original petition does not allege that the amount in
controversy is within the jurisdictional limits of the court. In its request for relief, 
Rapid Settlements asked that the trial court “enter judgment confirming the
arbitrator’s award as made by the arbitrator.” Rapid Settlements attached a copy of
the arbitration award, and expressly incorporated it by reference. The arbitration
award orders Echols and Transamerica “to deliver and make payable to [Rapid
Settlements] . . . [o]ne (1) lump sum payment in the amount of $100,000 due and
payable on December 17, 2027 . . . as such become due.” It also awards Rapid
Settlements $375 in arbitration fees.


 
Although its pleadings sought enforcement of an arbitration award under which
it was to receive $100,375, the award also requires Rapid Settlements to pay Echols
the net amount of $4,625 for the assignment of the right to the future payments under
the transfer agreement. Thus, the maximum amount Rapid Settlements sought to
recover in its original pleadings for enforcement of the arbitration award is $95,375,
an amount within the jurisdictional limits of the trial court. We hold that the amount
in controversy was within the jurisdictional limiates of the court.
II.      Transamerica’s Appellate Standing
A party may file a restricted appeal when, despite its status as a party to the
suit, it: (1) did not participate either in person or through counsel in the hearing that
resulted in the judgment it complains of; and (2) did not timely file a postjudgment
motion or request for findings of fact and conclusions of law, or notice its appeal
within the time permitted under the regular appellate timetable. Quaestor Inv., Inc.
v. State, 997 S.W.2d 226, 227 (Tex. 1999); Tex. R. App. P. 30. The party must file
notice of its restricted appeal within six months after the trial court signs the
judgment. Tex. R. App. P. 26.1(c). The party also must show error apparent from the
face of the record. Quaestor, 997 S.W.2d at 227. 
Transamerica is subject to service and, as insurer and obligor of the structured
settlement with Echols, has an interest in avoiding exposure to competing claims to
future payments. See Tex. Civ. Prac. & Rem. Code Ann. § 141.002(7) (Vernon
2005) (defining annuity insurer and “any other party with continuing rights or
obligations” as interested persons with respect to structured settlements); Tex. R. Civ.
P. 39; see, e.g., Johnson v. Structured Asset Servs., LLC, 148 S.W.3d 711, 718 (Tex.
App.–Dallas 2004, no pet.). Transamerica did not participate in the confirmation
hearing that led to the judgment, did not file any postjudgment motions, and filed
notice of its appeal within six months after the trial court signed the judgment.


 
Transamerica therefore meets the requirements for bringing this restricted appeal. 
 

III.    Does the Arbitration Award Bind Transamerica?
In the underlying transaction in this case, Echols, a tort claimant who settled
his claim by entering into a structured settlement, entered into an agreement to
transfer his future-payment rights to Rapid Settlements, a factoring company, in
exchange for a discounted lump sum paid in the present. Transamerica, which is
responsible for insuring and distributing the future-income stream, contends it cannot
be bound by the arbitrator’s decision because (1) it is not a party to the transfer
agreement, and therefore not a party to its arbitration clause, and (2) its relationship
with Echols does not support any theory under which Echols’ signing of the
agreement would otherwise bind Transamerica. Rapid Settlements, on the other hand,
asserts that Transamerica is “bound as a mere stakeholder” under a theory of privity,
and maintains that Transamerica does not have a “distinct and separate interest in the
underlying dispute.” The trial court’s judgment adopts Rapid Settlements’ position,
viewing the question of whether it had jurisdiction over Transamerica as “irrelevant
because this proceeding is the equivalent of an ‘in rem’ or interpleader action and the
Arbitrator has jurisdiction as in an interpleader over the monies due by [an] Annuity
Owner and Annuity Issuer over which the only issue is to whom Annuity Owner and
Annuity Issuer will pay same.” 
“It goes without saying that a contract cannot bind a nonparty.” EEOC v.
Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 764 (2002). “[A] duty to
arbitrate can arise only by agreement.” United Steel, Paper & Forestry, Rubber,
Mfg., Energy, Allied Indus. & Serv. Workers Int’l Union v. TriMas Corp., 531 F.3d
531, 535 (7th Cir. 2008) (citing United Steelworkers of Am. v. Warrior & Gulf, 363
U.S. 574, 582, 80 S. Ct. 1347, 1352 (1960)). 
A “gateway dispute” about whether the parties are bound by a given arbitration
clause raises “a question of arbitrability for a Court to decide.” Howsam v. Dean
Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 592 (2002); see also AT & T
Techs., Inc. v. Communc'ns Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415, 1418
(1986); TriMas Corp., 531 F.3d at 535; Will-Drill Res., Inc. v. Samson Res. Co., 352
F.3d 211, 219 (5th Cir. 2003) (holding that “where a party attacks the very existence
of an agreement, as opposed to its continued validity or enforcement, the courts must
first resolve that dispute”). Under the FAA, state law governs the question of whether
a litigant has agreed to arbitrate. First Options of Chicago, Inc. v. Kaplan, 514 U.S.
938, 944–45, 115 S. Ct. 1920, 1924 (1995); In re Weekley Homes, L.P., 180 S.W.3d
127, 130–31 (Tex. 2005). 
According to principles of contract and agency law, arbitration agreements may
bind nonsignatories under any of six theories: (1) incorporation by reference; (2)
assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third party
beneficiary. See In re Kellogg Brown & Root, Inc., 166 S.W.3d at 739. In
determining whether Transamerica’s interest falls under any of these theories, we
must first examine the extent to which state law defines Transamerica’s duties as an
annuity insurer and obligor of Echols’ structured settlement. 
Texas and the forty-two other states that have enacted structured settlement
protection acts did so to protect unwary tort claimants from potential abuse in their
transactions with factoring companies. Symetra Life Ins. Co. v. Rapid Settlements,
Ltd., No. 4:05-CV-03167, 2008 WL 901584, at *2 (S.D. Tex.); see Tex. Civ. Prac.
& Rem. Code Ann. § 141.004 (Vernon 2005).


 The district court in Symetra
summarized the function and purpose of the state structured settlement protection
statutes:
These statutes typically require the factoring company fully to disclose
the effect of the proposed transfer and require a state-court judge
affirmatively to approve the transfer after a hearing as in the best
interests of the settling tort claimant. The purpose of the statutes is to
protect the claimant/payee from overreaching by factoring companies
and to ensure that the decision to give up future-payment streams in
exchange for a present discounted lump-sum payment is informed and
voluntary.

Id.; see also In re Rapid Settlements, Ltd., 202 S.W.3d 456, 460 n.1 (Tex.
App.—Beaumont 2006, pet. denied) (citing H.B. 1920, 77th Leg., Bill Analysis, Mar.
6, 2001); Johnson v. Structured Asset Servs., L.L.C., 148 S.W.3d 711, 729 (Tex.
App.—Dallas 2004, no pet.) (observing that purpose of SSPA is to protect unwary
structured settlement recipients who are “in need of cash from exploitation by
factoring companies”). Rapid Settlements did not seek court approval required under
the Texas and Tennessee acts.
The structured settlement protection acts detail the procedure courts must
follow for adjudicating an application for authorization of a transfer of structured
settlement payment rights. See, e.g., Tenn. Code § 47-18-2604; Tex. Civ. Prac. &
Rem. Code Ann. § 141.006. The party seeking authorization must serve written
disclosures on all interested parties before the hearing to consider whether the
proposed transfer is in the best interests of the proposed transferor and meets the
other statutory requirements for approval. See, e.g., Tenn. Code § 47-18-2604; Tex.
Civ. Prac. & Rem. Code Ann. § 141.006. The definition of “interested party” in
these statutes typically includes annuity insurers, obligors, and issuers, and requires
that they receive notice of a judicial application for authorization of a transfer of
structured settlement payment rights. See Tenn. Code §§ 47-18-2602(6), 47-18-2604; Tex. Civ. Prac. & Rem. Code Ann. §§ 141.002(7), 141.006. The state
statutes thus expressly recognize that annuity insurers and obligors like Transamerica
are “interested parties,” and thereby acknowledge that annuity insurers and obligors
like Transamerica are not merely stakeholders, but rather have a unique interest in
ensuring compliance with the statutory restrictions on the transfer of structured
settlement rights. The arbitration award and the trial court’s judgment confirming
that award fail to protect that interest, and potentially expose Transamerica both to
conflicting payment demands and the consequences of violating the state structured
settlement protection acts if it transfers the annuity payments without the court
approval these statutes require. See Symetra, 2008 WL 901584 at *18. 
Rapid Settlements forwards no other basis to bind Transamerica, a
nonsignatory, to the arbitration clause in the transfer agreement. It does, however,
contend that state law is irrelevant in the context of a confirmation of an FAA-governed arbitration clause, such as the one at issue here. Rapid Settlements points
to the United States Supreme Court’s recent decisions in Preston v. Ferrer, 128 S. Ct.
978 (2008), and Hall Street Associates, L.L.C. v. Mattel, Inc., 128 S. Ct. 1396 (2008),
as support for its contention. We find these cases inapposite. In Preston, the Court
rejected the petitioner’s claim that a state administrative agency with exclusive
jurisdiction under state statute to decide his challenge to the validity of the parties’
contract—an issue that admittedly fell within the contract’s arbitration
clause—should hear the challenge before subjecting the claim to arbitration. 128 S.
Ct. at 985, 987. In Mattel, the Court held that the FAA’s statutory grounds for
prompt vacatur and modification are exclusive, and cannot be supplemented by
contract.


 128 S. Ct. At 1400. Neither of these cases involves a nonsignatory claim,
nor does the Court disturb its prior holdings that the issue of whether a party has
agreed to arbitrate is a question of state law. 
Transamerica’s role in the structured settlement transaction—one informed by
state law—does not render it a party to the transfer agreement’s arbitration clause or
otherwise bind it as a nonsignatory. Accordingly, we hold that the arbitration clause
in the transfer agreement between Echols and Rapid Settlements does not bind
Transamerica, and that neither the arbitration award nor the trial court’s judgment
confirming that award is enforceable against it.


 

Conclusion
We hold that the trial court erred in entering judgment confirming the
arbitration award against Transamerica in the absence of Transamerica’s agreement
to arbitrate. We therefore reverse the portion of the trial court’s judgment that orders
Transamerica to perform or refrain from performing any act, and render judgment that
Rapid Settlements take nothing against Transamerica on its claim for enforcement.
All pending motions are dismissed as moot.
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Bland.