# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00578-CV

**Robert H. Osburn, P.C., Appellant**

**v.**

**Realty Engineering, Inc., Appellee**

### FROM COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NO. 2007CV0590, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Robert H. Osburn appeals the judgment of the county court at law awarding damages for breach of contract to Realty Engineering, Inc., and determining that Osburn take nothing from Realty on his negligence claim. On appeal, Osburn contends that Realty's engineering license was suspended at the time the contract was signed, rendering the contract void as against public policy, illegal, and unenforceable. He also contends that the judgment as to his negligence claim was against the great weight and preponderance of the evidence. We affirm.

The parties entered a contract for Realty to provide expert witness services in a lawsuit concerning a structure at an apartment building. The parties agree that the contract—signed by Osburn and Norman Cooper, Realty's sole stockholder—was signed sometime in early February 2005. Cooper inspected the property on February 25, 2005, issued his report on May 26, 2005, and testified at his deposition on August 15-16, 2005. Cooper testified that the

building inspector for the City of Bedford told him that the Uniform Building Code applied at the time of construction. He did not obtain written materials from the City before his deposition, but did obtain them afterwards. He then learned that the Standard Building Code was in effect at the time of construction. Cooper admitted that he could have made the request for written materials before he wrote his report or testified at his deposition. Cooper testified that he did not supplement his report after his deposition because his client—Osburn—did not authorize him to do that. Cooper testified, however, that his misunderstanding of what code was in effect when the building was built made no difference because (1) the code that is in effect at the date of injury is the applicable code and (2) the Standard and Uniform codes had the same relevant standard for the engineering issue in dispute.

Osburn testified that, when he learned that the wrong code was identified in the report, he knew that Cooper would be impeachable on the witness stand. Even though Cooper felt he could explain away the misidentified code, Osburn decided to get a new expert in a case he described as hotly contested. Osburn testified that he hired an architect as an expert and paid him $15,000. The case for which both experts were hired settled on the eve of trial.

Osburn noted that his decision to seek a new expert was reinforced when he learned from opposing counsel that Cooper was not "a registered engineer in his firm." Osburn contends that Realty's engineering license fee was not timely paid by January 31, 2005, and that this renders any contract for engineering services entered into by Realty void. Osburn sought on cross-examination for Cooper to admit that, from January 31 to March 23, 2005, Cooper was not a licensed professional engineer. Cooper refused. He conceded that Realty paid a $500 administrative penalty to the State

because it had not properly paid a fee that was due. Cooper testified, "What I remember is that this never was a question of my engineering from my personal license as an engineer and my practice as an engineer and as an individual. This was only for the corporation's license with the state." Cooper testified that he was not informed that Realty's license was revoked or suspended, only that he had to pay a $500 fine to get it renewed.

Osburn asked Cooper to waive his fees because of the code misidentification. Osburn paid Realty for Cooper's services from February through August 2005. Cooper sued for the remainder of the contracted fee and prevailed. Osburn appeals.

Osburn does not dispute that he entered a contract with Realty, but argues that the contract should not be enforced. He contends that, because Realty failed to timely pay its engineering license fee before the contract was signed, the trial court should have refused to enforce the contract as illegal or against public policy. Osburn's argument is an affirmative defense for which he bore the burden of proof. Review of whether a contract violates public policy is a question of law, which is reviewed de novo. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 726 (Tex. App.—Dallas 2004, no pet.). The rule that public policy precludes the enforcement of an otherwise valid contract should be applied cautiously and only in cases involving dominant public interests. *Id.*; *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 924 (Tex. App.—Fort Worth 1988, writ denied). Contracts are subject to the public policy of the State. *Johnson*, 148 S.W.3d at 726. A state's public policy is embodied in its constitution, statutes, and the decisions of its courts. *Id.* at 727; *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex. 2003). In examining an

3

agreement to determine if it is contrary to public policy, we look to whether the agreement has a tendency to injure the public good. *Johnson*, 148 S.W.3d at 726-27.

Osburn failed to put on evidence that requires a conclusion that the contract was void. Osburn asserts that Realty violated the occupations code provisions setting out the procedure by which persons licensed as professional engineers are to renew their licenses. *See* Tex. Occ. Code Ann. § 1001.353 (West Supp. 2009). It is not clear that section 1001.353 applies to corporations. It applies to "persons" who have an engineering license. *Id*. Although corporations are deemed persons for some purposes, we are not persuaded a corporation can fulfill the licensing requirements that include the following: graduating from an approved engineering curriculum or recognized institution of higher learning, passing an examination (or having the requirement waived), engaging in the active practice of engineering for a specified period, having a completed application approved, and paying required fees. *See id.* §§ 1001.302-.305, .308 (West 2004). The only evidence is that Cooper, the expert witness whose services Realty provided, was a licensed engineer during the entirety of the contract. Cooper conceded that Realty had paid a fine for late payment of a fee, but Osburn did not and does not present authority compelling a conclusion that a late payment of this unspecified fee voids any contract Realty entered while the fee remained unpaid.[1] There is no documentary evidence in the record regarding a late-paid fee or a suspended or expired license or registration for either Cooper or Realty. Whatever fee was late, it was undisputedly paid by

---

[1] There is a separate registration requirement for business entities engaging in the practice of engineering. *See* Tex. Occ. Code Ann. § 1001.405 (West 2004). Although it is not clear what the effect of a late payment is on the ability to form a contract, that statute and theory is not cited or relied on by Osburn and cannot form the basis for reversal. *See* Tex. R. App. P. 33.1(a)(1), 38.6(i).

4

March 23, 2005, well before Cooper performed the expert witness services of filing his expert report in May 2005 and testifying at his August 2005 deposition. Osburn has not demonstrated that the contract to supply an expert witness was rendered void, illegal, or against public policy by the late payment of an unspecified fee. He has not shown that the trial court erred by granting judgment to Realty for breach of contract.

Osburn contends that the trial court's judgment on his negligence claim was against the great weight and preponderance of the evidence. When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). To recover on a negligence theory, Osburn must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The trial court did not specify on what basis it denied the negligence claim. Osburn cites Cooper's admission that he relied on an oral representation by the City of Bedford's building inspector that the Uniform Building Code applied to the apartments' construction and that he did not obtain written materials or do other research to determine the applicable building code before writing his report or testifying at deposition. It was eventually discovered that the Standard Building Code applied. Osburn testified that errors in expert reports are serious and that Cooper's actions made him impeachable on the witness stand. Consequently, Osburn chose to hire a new expert for $15,000 to redo Cooper's work.

The trial court's judgment is supported by an implied finding that Cooper's failure to get written confirmation of the applicable building code did not proximately cause Osburn's

5

damages. That implied finding is supported by Cooper's testimony that his error regarding the applicable building code was (1) explainable, due to his reliance on the City of Bedford's building inspector, (2) rectifiable, through amendment of the report, and (3) inconsequential, given the similarities of the building codes. Cooper testified that he offered, but was not authorized by Osburn, to update his report to use the correct building code. Osburn's testimony regarding the serious nature of errors in expert reports and his decision to hire a new expert does not constitute a great weight or preponderance of evidence in favor of a negligence finding. We conclude that the trial court's judgment that Osburn take nothing by his negligence claim is not against the great weight and preponderance of the evidence.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: August 6, 2010

6