02-10-028-CV Rehearing En Banc









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00028-CV

 

 


 
 
 Mark Rotella, Mark Rotella Custom Homes, Inc. d/b/a
 Benchmark Custom Homes, Robert R. Cole, Jr., and Cole & Cole, P.C.
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Joan Cutting and Mid-Continent Casualty Company
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 158th
District Court OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1] ON
REHEARING EN BANC

----------

 

I. 
Introduction

          Appellants
Mark Rotella Custom Homes, Inc. d/b/a Benchmark Custom Homes (“MRCH”) and Mark Rotella
(collectively with MRCH, “Rotella”) and Cole & Cole, P.C., and Robert R.
Cole, Jr. (collectively “Cole”) filed a motion for rehearing en banc.  We deny
the motion for rehearing en banc, but we withdraw our opinion of April 7, 2011,
and substitute the following in its place.

          In
five issues, Rotella and Cole appeal the trial court’s order awarding summary
judgment to Appellees Joan Cutting and Mid-Continent Casualty Company
(“MCCC”).  We affirm.

II. 
Factual and Procedural Background

          In
2007, Cutting won a $3.2 million judgment against Rotella.  See Mark Rotella
Custom Homes, Inc. v. Cutting, No. 02-07-00133-CV, 2008 WL 623785, at *1, 5
(Tex. App.—Fort Worth Mar. 6, 2008, no pet.) (affirming Cutting’s summary
judgment against MRCH and Rotella for her claims involving, among other things,
unscrupulous billing practices and defective home construction).  Rotella then
sued MCCC, his commercial general liability (“CGL”) insurer, for refusing to
defend him against Cutting’s claims and to indemnify him for Cutting’s judgment
against him.  He hired Cole to represent him.  See Rotella v. Mid-Continent
Cas. Co., No. 3:08-CV-0486-G, 2010 WL 1330449, at *1 (N.D. Tex. Apr. 5,
2010), appeal docketed, No. 10-10554 (5th Cir. June 4, 2010).  The
federal court granted a partial summary judgment for Rotella on MCCC’s duty to
defend, and MCCC joined Cutting as a necessary third party.  See Rotella v.
Mid-Continent Cas. Co., No. 3:08-CV-0486-G, 2008 WL 5272787, at *1 (N.D.
Tex. Dec. 17, 2008, order).

          The
parties went to mediation in April 2009, and MCCC and Rotella agreed that MCCC
would pay Rotella $200,000 in satisfaction of his claim against MCCC for his
attorney’s fees incurred in Cutting’s suit.[2]  See
Rotella v. Mid-Continent Cas. Co., No. 3:08-CV-0486-G, 2009 WL 1287834, at
*1 (N.D. Tex. May 8, 2009); see also Rotella, 2010 WL 1330449 at * 2
(stating that Rotella and MCCC entered into a settlement agreement for $200,000
regarding MCCC’s liability to Rotella on Rotella’s duty-to-defend claim). 
Cutting sought, and the federal court denied, a temporary restraining order and
preliminary injunction to keep MCCC from paying the settlement funds to Rotella
and to instead pay them to her.[3]  Rotella,
2009 WL 1287834, at *1.  In May 2009, Cutting filed an application for post-judgment
writ of garnishment in state court to “trap” the funds before MCCC payed them
to Rotella, which was granted.

          Rotella
and Cole filed an emergency motion to dissolve the writ of garnishment.  MCCC
filed a motion to interplead the settlement funds with its response to the writ
of garnishment, and it deposited the funds into the court’s registry.  The
trial court denied Rotella and Cole’s emergency motion, and Rotella and Cole
filed claims against MCCC for breach of contract, conversion, breach of fiduciary
duty, and tortious interference and against Cutting for tortious interference
and for conspiracy to convert.

          Two
additional parties with claims to the settlement funds intervened: Rotella’s
ex-wife, for Rotella’s delinquent child support payments, and an engineering
company, a judgment creditor, for fees Rotella still owed for expert witness
services in the original Cutting-Rotella lawsuit.  Cutting and Rotella and Cole
filed motions to disburse funds.  MCCC, Cutting, and Rotella’s ex-wife filed
motions for summary judgment.[4]

          The
trial court granted MCCC’s and Cutting’s motions for summary judgment, granted
Cutting’s motion to disburse funds, denied the ex-wife’s motion for summary
judgment and motion to foreclose child support lien, and denied Rotella and
Cole’s motion to disburse.[5]  The
trial court awarded to MCCC $2,633.40 of the interpleaded $200,000 as
attorney’s fees for the interpleader, with an additional $14,922.60 from
Rotella and Cole for attorney’s fees incurred in defense against their counter
and cross claims, and it ordered the remainder of the $200,000 to be disbursed
to Cutting.  After the trial court denied Rotella and Cole’s motion for
reconsideration and new trial, this appeal followed.

III. 
Writ of Garnishment

          In
their first issue, Rotella and Cole complain that the trial court abused its
discretion by refusing to dissolve the writ of garnishment because insurance
policy proceeds are exempt from seizure under Texas law.  See Gen.
Elec. Capital Corp. v. ICO, Inc., 230 S.W.3d 702, 705 (Tex. App.—Houston
[14th Dist.] 2007, pet. denied) (setting out standard of review).  To determine
whether a trial court abused its discretion, we must decide whether the trial
court acted without reference to any guiding rules or principles; in other words,
we must decide whether the act was arbitrary or unreasonable.  Low v. Henry,
221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835,
838–39 (Tex. 2004).

          A
writ of garnishment is available if a plaintiff has a valid, subsisting
judgment and makes an affidavit stating that, within the plaintiff’s knowledge,
the defendant does not possess property in Texas subject to execution sufficient
to satisfy the judgment.  Tex. Civ. Prac. & Rem. Code Ann. § 63.001(3) (West
2008).  Cutting filed her application for writ of garnishment against MCCC
under this section.  MCCC interpleaded the funds after the trial court issued
the writ.  See Tex. R. Civ. P. 43; Thompson v. Fulton Bag &
Cotton Mills, 155 Tex. 365, 286 S.W.2d 411, 414 (1956) (“[T]he garnishee
may pay the funds into the court and by interpleader bring into the suit all
other claimants thereto in order to protect itself against double liability.”).

          Rotella
and Cole admitted the propriety of the interpleader in their consolidated
response to MCCC’s and Cutting’s motions for summary judgment; however, they
argued to the trial court that the funds were protected from garnishment by
law, citing the same provision of the insurance code upon which they now rely.

Section
1108.051 of the insurance code states that

(a) Except as
provided by Section 1108.053, this section applies to any benefits, including
the cash value and proceeds of an insurance policy, to be provided to an
insured or beneficiary under:

 

(1) An insurance
policy or annuity contract issued by a life, health, or accident insurance
company, including a mutual company or fraternal benefit society;

 

          . . . .

 

(b) Notwithstanding
any other provision of this code, insurance or annuity benefits described by
Subsection (a):

 

          . . . .

 

          (2) are fully
exempt from:

 

                   (A) 
garnishment, attachment, execution, or other   seizure[.]

          

Tex.
Ins. Code Ann. § 1108.051(a)(1), (b)(2)(A) (West 2009) (emphasis added).

          The
statute does not mention casualty insurance companies, and Rotella and Cole
direct us to no authority to support casualty insurance companies being covered
by this section.  To the contrary, a federal bankruptcy court has interpreted
this statute to exclude casualty policies.  In re Powers, 112
B.R. 178, 180–81 (Bankr. S.D. Tex. 1989) (distinguishing accident insurance
from casualty insurance and noting that the Texas Insurance Code differentiates
between the two types by providing separate statutes to govern the
incorporation and operation of life, health, and accident companies on the one
hand, and general casualty companies on the other).  Compare Tex. Ins.
Code Ann. §§ 841.001–.705 (West 2009) (pertaining to life, health, or accident
insurance companies), with id. §§ 861.001–.703 (West 2009) (pertaining
to general casualty companies).  Because we may not “judicially amend a statute
and add words that are not implicitly contained in the language of the
statute,” see Jones v. Liberty Mut. Ins. Co., 745 S.W.2d 901, 902 (Tex.
1988), we decline Rotella and Cole’s invitation to expand section 1108.051 to
include casualty insurance companies, hold that the trial court did not abuse
its discretion under the circumstances presented here, and overrule their first
issue.

IV. 
Interpleaded Funds

          In
their second and third issues, Rotella and Cole complain about the trial
court’s decisions regarding the ownership and disposition of the interpleaded
funds.

A. 
Fee Agreement

          In
their second issue, Rotella and Cole argue that the trial court erred by
determining that the interpleaded funds belonged entirely to Rotella and not
partially to Cole by assignment.  Rotella and Cole had the burden to prove
Cole’s right to the interpleaded funds.  See Westbrook Constr. Co. v.
Fidelity Nat’l Bank of Dallas, 813 S.W.2d 752, 754 (Tex. App.—Fort Worth
1991, writ denied); see also Marine Indem. Ins. Co. of Am. v. Lockwood
Warehouse & Storage, 115 F.3d 282, 289 (5th Cir.) (stating that a
claimant to interpleaded funds has a burden of establishing its right to them
by a preponderance of the evidence), cert denied 522 U.S. 967 (1997); Johnson
v. Structured Asset Servs., LLC, 148 S.W.3d 711, 726 (Tex. App.—Dallas 2004,
no pet.) (“In an interpleader action, each party making a claim to the funds at
issue bears the burden of establishing his right to the funds.”).

          Rotella
and Cole specifically argue that Rotella had to hire Cole to sue MCCC in
federal court after MCCC refused to defend him pursuant to his insurance policy
and, in exchange for prosecuting his lawsuit against MCCC, Rotella agreed to
assign forty-five percent of any recovery from the litigation to Cole.  Therefore,
Rotella and Cole argue, Cole “acquired an ownership stake in the litigation,”
and when MCCC liquidated its liability to Rotella through the $200,000
settlement, forty-five percent of the $200,000 became Cole’s property.  They
also argue that Cole had an equitable right to his share of the $200,000.

          However,
the exact nature of the fee agreement between Rotella and Cole is less than
clear.  The record reflects that Rotella and Cole had a legal services fee agreement
dated April 1, 2007, for Cole to be paid 

45% of the net
proceeds . . . from any and all sums collected from the following matters:

 

A.  [MCCC]
litigation, including but not limited to, the lawsuit styled Mark Rotella, Mark
Rotella Custom Homes, Inc. and Benchmark Custom Homes, Inc. v. Mid-Continent
Casualty Company, Inc., and any other lawsuit attempting to recover on the
Rotella Group’s Mid-Continent policies, including but not limited to those
insurance policies attached and identified as the following . . . . 

 

. . . . 

 

6.  The
aforementioned assignment constitutes an agreement between the Rotella Group
and the Lawyer Group as an assignment of a 45% interest in the recovery
described above, as opposed to a contingent interest.  This is not a contingent
fee agreement as a lawyer would ordinarily accept if it involved something
like a personal injury matter, like a car wreck.  . . .  [Emphasis added.]

 

But during
the course of the federal litigation and during the state court interpleader
proceedings, Rotella and Cole also represented that Cole was owed fees based
both on an hourly billing rate and under a contingent fee agreement.  And in
the May 12, 2009 release and indemnity agreement between Rotella and MCCC for
the $200,000, Rotella represented and warranted to MCCC “that he and it are the
only owners of the claims released herein by them and that they have not
transferred, assigned, subrogated or otherwise encumbered said claims or
any part thereof.”  [Emphasis added.]  Also, while the 2007 agreement’s plain
language attempts to assign an interest in Rotella’s litigation pertaining to
his rights under the insurance policy—the terms upon which the underlying
settlement agreement is based—the record does not contain the express written
consent of the insurance company to the assignment, which the policy explicitly
requires.[6]

          The
record reflects that Rotella and Cole never presented their “equitable right of
assignment” argument to the trial court, thereby failing to preserve it for our
review.[7]  See Tex. R. App.
P. 33.1.  And based on all of the above, because the trial court could have
reasonably found that Rotella and Cole did not meet their burden of proof with
regard to the disposition of the interpleaded funds, we overrule the remainder
of Rotella and Cole’s second issue.  See Westbrook Constr., 813 S.W.2d at
754; see also Marine Indem. Ins. Co. of Am., 115 F.3d at 289; Johnson,
148 S.W.3d at 726.

B. 
Priority

          In
their third issue, Rotella and Cole complain that the trial court erred by prioritizing
the disbursement of the interpleaded funds because Cole had a superior right to
the funds, the “Common Fund Doctrine” applied to the funds, and Rotella’s child
support arrearages took precedence over Cutting’s claim.

1.   
 Liens

          Rotella
and Cole first argue that if Cole did not own some of the interpleaded funds
outright, “then [he] certainly held a claim or charge in the property at issue
which would constitute a lien interest,” and that Cole’s contractual lien
interest in the settlement funds attached prior to the garnishment and as early
as April 1, 2007.  Attorney’s fee liens in Texas have been summarized as
follows:

[T]here are two types
of liens for attorney’s fees recognized by Texas law.  First, in Texas, an
attorney can assert a common law lien over a client’s property in the
attorney’s possession.  This is known as a possessory lien.  “A possessory lien
requires both actual possession by the attorney and that the property comes
into the attorney’s possession ‘in his character as an attorney.’” . . . 

 

The second type of
lien in Texas is created pursuant to a contractual agreement.  “Under Texas
law, a contract may establish an attorney’s lien for money received in judgment
or settlement of a matter.”  However, absent such a contract, no lien exists.  

 

Norem
v. Norem, No. 3:07-CV-0051-BF(G), 2008 WL 2245821, at *5–6 (N.D.
Tex. June 2, 2008) (citations omitted).

          The
record reflects that Cole never possessed the interpleaded funds; therefore, he
did not have a possessory lien.  Further, nothing in the record shows a
contractual lien in favor of Cole, and we have held above that no valid
assignment of the settlement proceeds occurred.  And Cole has not directed us
to any authority or evidence in the record to explain why or how a lien
otherwise attached.  We overrule this portion of Rotella and Cole’s third
issue.

2.   
 Common Fund Doctrine

          Rotella
and Cole next argue that the common fund doctrine applies to trump the trial
court’s prioritization.  However, the common fund doctrine does not apply to
debtor-creditor relationships because the creditor’s interest is not coequal
with the debtor’s claim to settlement proceeds.  Tex. Farmers Ins. Co. v.
Seals, 948 S.W.2d 532, 534 (Tex. App.—Fort Worth 1997, no writ) (stating
that the common fund doctrine does not apply in a quantum meruit or
debtor-creditor situation); see also Bashara v. Baptist Mem. Hosp.
Sys., 685 S.W.2d 307, 310 (Tex. 1985) (defining the basis for the common
fund doctrine as when “‘one litigant has borne the burden and expense of the
litigation that has inured to the benefit of others as well as himself [such
that] those who have shared in the benefits should contribute to the expense'”). 
Here, Cutting is Rotella’s creditor, and Rotella and Cole cannot claim a
portion of the interpleaded funds used to satisfy Rotella’s existing judgment
debt as Cole’s attorney’s fees.  See Seals, 948 S.W.2d at 534.  We
overrule this portion of Rotella and Cole’s third issue.

3.   
Child Support 

          Finally,
Rotella and Cole argue that $63,185.74 of the interpleaded funds should have
been held exempt to allow Rotella to pay his child support arrearages, citing
property code section 42.001(b)(3).

          Section
42.001(b)(3) states that “alimony, support, or separate maintenance received or
to be received by the debtor for the support of the debtor or a dependent of
the debtor” is exempt from seizure and not included in the aggregate
limitations prescribed by section 42.001(a).  Tex. Prop. Code Ann. §
42.001(b)(3) (West 2009).  Assuming this provision applies, Rotella and Cole do
not have standing to bring this argument because the funds were not received or
to be received by Rotella, a child support obligor, for his support or the
support of his dependents—they were funds to be received by Rotella for
settling one of his claims against his CGL insurer.  See id.; see
also Tex. Fam. Code Ann. §§ 157.311(2)(A) (West 2009) (stating that
“claimant” means “the [child support] obligee” (emphasis added)),
157.312(a) (West 2009) (“A claimant may enforce child support by a lien
as provided in this subchapter.” (emphasis added)).  Furthermore, the record
reflects that the interpleaded funds were not “alimony, support, or separate
maintenance.”  See Tex. Prop. Code Ann. § 42.001(b)(3).  And the
exemption under section 42.001 does not apply to a child support lien
established under the family code.  See id. § 42.005 (West 2009).  We
overrule the remainder of Rotella and Cole’s third issue.

V. 
Inadequate Briefing

          In
their fourth issue, Cole and Rotella assert that the trial court erred by granting
summary judgments to Cutting and MCCC, complaining that fact issues remain in
part because the trial court did not allow them to examine Cutting as to their
counterclaims and their crossclaims in the garnishment proceeding, and by
sanctioning them $2,500 with regard to their discovery attempts.  In their
fifth issue, they argue that the trial court abused its discretion by awarding
attorney’s fees to MCCC when it acted as both a defendant and as an
interpleader and failed to segregate its attorney’s fees.  They complain that
MCCC was either not entitled to the amount of attorney’s fees it received or
that it was not entitled to the amount attributable to its defense rather than
the interpleader. 

          An
appellate brief must contain all points or issues relied upon, argument and
authorities under each point or issue, and all facts relied upon for the appeal
with references to the pages in the record where those facts can be found.  Weaver
v. Sw. Nat’l Bank, 813 S.W.2d 481, 482 (Tex. 1991); see also Tex. R.
App. P. 38.1(g), (i).  Furthermore, an appellate court is not required to
search the appellate record, with no guidance from the briefing party, to
determine if the record supports the party’s argument.  Hall v. Stephenson,
919 S.W.2d 454, 466–67 (Tex. App.—Fort Worth 1996, writ denied).  And “we know
of no authority obligating us to become advocates for a particular litigant
through performing their research and developing their argument for them.”  Tello
v. Bank One, N.A., 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.]
2007, no pet.) (internal quotation omitted).  Thus, an inadequately briefed
issue may be waived on appeal.  Hall, 919 S.W.2d at 467; see also
Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284–85 (Tex.
1994) (discussing the “long-standing rule“ that a point may be waived due to
inadequate briefing).  Further, the complaint on appeal must be the same as
that presented in the trial court.  See Banda v. Garcia, 955 S.W.2d 270,
272 (Tex. 1997).

          In
their fourth issue, Cole and Rotella’s brief cites no authority, fails to set
out the elements of their claims, and fails to cite evidence in the record to
support their complaint that genuine issues of material fact remain regarding
their counterclaims and crossclaims.  See Tex. R. Civ. P. 166a(c), (i);
Tex. R. App. P. 38.1(i).  Rather, their argument consists of innuendo and
speculation.[8] 
And with regard to their discovery and sanctions complaint, as reflected in
Cutting’s motions for protective order from subpoena granted by the trial
court, Cutting resided out-of-state.  Her counsel argued that her testimony was
unnecessary, duplicative, and irrelevant and that Rotella and Cole had
subpoenaed her solely to harass her and cause her to incur undue expense.  In
the second motion, Cutting’s counsel also argued that the subpoena was untimely
and requested sanctions.[9]

          During
the hearing on the motions, Cole argued that he needed Cutting’s testimony
because she had committed fraud on the court in the 2007 summary judgment and
stated that he planned to file a bill of review if he could acquire her
testimony.  The trial judge replied that he did not see that there was any
legal basis for attempting to subpoena Cutting or the engineering firm,
stating,

These are judgments. 
They’re done.  It’s over.  I have heard no reason whatsoever that would come
close to saying that these witnesses can provide the court with any testimony
that has any relevance whatsoever to enforcement of the judgment.  They may all
have testimony relative to winning a Bill of Review, but this ain’t a Bill of
Review.  Maybe you can file one of these motions to take a deposition . . . . 

 

See
Tex. R. Civ. P. 202.1–.4 (setting out the procedure for taking depositions
before suit or to investigate claims).  Rotella and Cole have failed to explain
how the trial court abused its discretion in light of this record.  We hold
that Rotella and Cole have waived their fourth issue due to inadequate
briefing, and we overrule this issue.  See Tex. R. App. P. 38.1(i).

          With
regard to their fifth issue, Cole was not present at the final hearing in this
case, and Rotella stated that he did not know what to say about attorney’s fees
for MCCC.[10]
 They did not raise segregation of attorney’s fees in their motion for reconsideration
and for new trial.  Rather, the motion complained MCCC was not entitled to any
money based on the summary judgment.  Because the complaint on appeal must be
the same as that presented in the trial court, Rotella and Cole have failed to
preserve this issue.  See Banda, 955 S.W.2d at 272; see also Green
Int’l, Inc. v. Solis, 951 S.W.2d 384, 389 (Tex. 1997) (“[I]f no one objects
to the fact that the attorney’s fees are not segregated as to specific claims,
then the objection is waived.”).  We overrule Rotella and Cole’s final issue.

VI. 
Conclusion

          Having
overruled all of Rotella and Cole’s issues on appeal, we affirm the trial
court’s judgment.

 

 

BOB MCCOY
JUSTICE

 

EN BANC

 

Gardner, J. concurs without opinion.

 

DELIVERED: August 31, 2011 









[1]See Tex. R. App. P. 47.4.





[2]In June 2009, MCCC and Cutting
entered into a settlement agreement and partial release of judgment reducing the
$3.2 million judgment by approximately $600,000.  The federal court held that
by doing this, MCCC performed any duty it might have had to indemnify Rotella
for the construction-related damages in the Cutting suit.  Rotella 2010
WL 1330449, at *2–4.





[3]The federal court denied
Cutting’s requested relief but noted that she might be able to successfully
seek relief in state court.  Rotella, 2009 WL 1287834, at *2–3.





[4]MCCC moved for summary
judgment on ten grounds, including that it did not breach its settlement
contract with Rotella and that Rotella could produce no evidence to show breach
or damages caused by MCCC’s conduct, that it did not owe Rotella or Cole a
fiduciary duty, and that Rotella and Cole could not prove the elements of
conversion or tortious interference.  Cutting moved for summary judgment on
three grounds.





[5]Cole was not present at
the final hearing, and the other parties’ attorneys stated that Cole notified
them by email that he no longer represented Rotella or MRCH on the day before
the November 4, 2009 hearing.  Rotella denied any knowledge of this.





[6]The policy states, “Your
rights and duties under this policy may not be transferred without our written
consent except in the case of death of an individual named insured.”





[7]Further,
although “[a]fter judgment, attorneys who earn a contingency fee are
equitable owners (not mere claimants) of their portion of the judgment,” Madeksho
v. Abraham, Watkins, Nichols & Friend, 112 S.W.3d 679, 689 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied) (emphasis added), the plain
language of the 2007 fee agreement clearly states that this is not a
contingent fee agreement.





[8]Rotella
and Cole state, for example, “One would figure that [MCCC] would have taken
every opportunity to pay as soon as possible,” and “Why Mitchell would allow
his client, [MCCC], to become embroiled in this controversy when a simple
payment would have averted their involvement can only be explained by an
agreement with Cutting that prevented him from doing so.”

 





[9]The engineering firm also
filed a motion for protective order from Rotella and Cole’s subpoena and
requested sanctions.





[10]Rotella moved for a
continuance due to Cole’s absence at the hearing, and the trial court denied
it, but neither Rotella nor Cole raises this on appeal.