

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00028-CV

| | |
|---|---|
| MARK ROTELLA, MARK ROTELLA CUSTOM HOMES, INC. D/B/A BENCHMARK CUSTOM HOMES, ROBERT R. COLE, JR., AND COLE & COLE, P.C. | APPELLANTS |
| V. | |
| JOAN CUTTING AND MID-CONTINENT CASUALTY COMPANY | APPELLEES |

----------

### FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1] ON REHEARING EN BANC

----------

### I. Introduction

Appellants Mark Rotella Custom Homes, Inc. d/b/a Benchmark Custom

Homes ("MRCH") and Mark Rotella (collectively with MRCH, "Rotella") and Cole

---

[1]*See* Tex. R. App. P. 47.4.

& Cole, P.C., and Robert R. Cole, Jr. (collectively "Cole") filed a motion for rehearing en banc. We deny the motion for rehearing en banc, but we withdraw our opinion of April 7, 2011, and substitute the following in its place.

In five issues, Rotella and Cole appeal the trial court's order awarding summary judgment to Appellees Joan Cutting and Mid-Continent Casualty Company ("MCCC"). We affirm.

## II. Factual and Procedural Background

In 2007, Cutting won a $3.2 million judgment against Rotella. *See Mark Rotella Custom Homes, Inc. v. Cutting*, No. 02-07-00133-CV, 2008 WL 623785, at *1, 5 (Tex. App.—Fort Worth Mar. 6, 2008, no pet.) (affirming Cutting's summary judgment against MRCH and Rotella for her claims involving, among other things, unscrupulous billing practices and defective home construction). Rotella then sued MCCC, his commercial general liability ("CGL") insurer, for refusing to defend him against Cutting's claims and to indemnify him for Cutting's judgment against him. He hired Cole to represent him. *See Rotella v. Mid-Continent Cas. Co.*, No. 3:08-CV-0486-G, 2010 WL 1330449, at *1 (N.D. Tex. Apr. 5, 2010), *appeal docketed*, No. 10-10554 (5th Cir. June 4, 2010). The federal court granted a partial summary judgment for Rotella on MCCC's duty to defend, and MCCC joined Cutting as a necessary third party. *See Rotella v. Mid-Continent Cas. Co.*, No. 3:08-CV-0486-G, 2008 WL 5272787, at *1 (N.D. Tex. Dec. 17, 2008, order).

The parties went to mediation in April 2009, and MCCC and Rotella agreed that MCCC would pay Rotella $200,000 in satisfaction of his claim against MCCC for his attorney's fees incurred in Cutting's suit.[2]  *See Rotella v. Mid-Continent Cas. Co.*, No. 3:08-CV-0486-G, 2009 WL 1287834, at *1 (N.D. Tex. May 8, 2009); *see also Rotella*, 2010 WL 1330449 at * 2 (stating that Rotella and MCCC entered into a settlement agreement for $200,000 regarding MCCC's liability to Rotella on Rotella's duty-to-defend claim).  Cutting sought, and the federal court denied, a temporary restraining order and preliminary injunction to keep MCCC from paying the settlement funds to Rotella and to instead pay them to her.[3] *Rotella*, 2009 WL 1287834, at *1.  In May 2009, Cutting filed an application for post-judgment writ of garnishment in state court to "trap" the funds before MCCC payed them to Rotella, which was granted.

Rotella and Cole filed an emergency motion to dissolve the writ of garnishment.  MCCC filed a motion to interplead the settlement funds with its response to the writ of garnishment, and it deposited the funds into the court's registry.  The trial court denied Rotella and Cole's emergency motion, and

---

[2]In June 2009, MCCC and Cutting entered into a settlement agreement and partial release of judgment reducing the $3.2 million judgment by approximately $600,000.  The federal court held that by doing this, MCCC performed any duty it might have had to indemnify Rotella for the construction-related damages in the Cutting suit.  *Rotella* 2010 WL 1330449, at *2–4.

[3]The federal court denied Cutting's requested relief but noted that she might be able to successfully seek relief in state court.  *Rotella*, 2009 WL 1287834, at *2–3.

3

Rotella and Cole filed claims against MCCC for breach of contract, conversion, breach of fiduciary duty, and tortious interference and against Cutting for tortious interference and for conspiracy to convert.

Two additional parties with claims to the settlement funds intervened: Rotella's ex-wife, for Rotella's delinquent child support payments, and an engineering company, a judgment creditor, for fees Rotella still owed for expert witness services in the original Cutting-Rotella lawsuit. Cutting and Rotella and Cole filed motions to disburse funds. MCCC, Cutting, and Rotella's ex-wife filed motions for summary judgment.[4]

The trial court granted MCCC's and Cutting's motions for summary judgment, granted Cutting's motion to disburse funds, denied the ex-wife's motion for summary judgment and motion to foreclose child support lien, and denied Rotella and Cole's motion to disburse.[5] The trial court awarded to MCCC $2,633.40 of the interpleaded $200,000 as attorney's fees for the interpleader, with an additional $14,922.60 from Rotella and Cole for attorney's fees incurred

---

[4]MCCC moved for summary judgment on ten grounds, including that it did not breach its settlement contract with Rotella and that Rotella could produce no evidence to show breach or damages caused by MCCC's conduct, that it did not owe Rotella or Cole a fiduciary duty, and that Rotella and Cole could not prove the elements of conversion or tortious interference. Cutting moved for summary judgment on three grounds.

[5]Cole was not present at the final hearing, and the other parties' attorneys stated that Cole notified them by email that he no longer represented Rotella or MRCH on the day before the November 4, 2009 hearing. Rotella denied any knowledge of this.

in defense against their counter and cross claims, and it ordered the remainder of the $200,000 to be disbursed to Cutting. After the trial court denied Rotella and Cole's motion for reconsideration and new trial, this appeal followed.

### III. Writ of Garnishment

In their first issue, Rotella and Cole complain that the trial court abused its discretion by refusing to dissolve the writ of garnishment because insurance policy proceeds are exempt from seizure under Texas law. *See Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 705 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (setting out standard of review). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

A writ of garnishment is available if a plaintiff has a valid, subsisting judgment and makes an affidavit stating that, within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the judgment. Tex. Civ. Prac. & Rem. Code Ann. § 63.001(3) (West 2008). Cutting filed her application for writ of garnishment against MCCC under this section. MCCC interpleaded the funds after the trial court issued the writ. *See* Tex. R. Civ. P. 43; *Thompson v. Fulton Bag & Cotton Mills*, 155 Tex. 365, 286 S.W.2d 411, 414 (1956) ("[T]he garnishee may pay the funds into the court

5

and by interpleader bring into the suit all other claimants thereto in order to protect itself against double liability.").

Rotella and Cole admitted the propriety of the interpleader in their consolidated response to MCCC's and Cutting's motions for summary judgment; however, they argued to the trial court that the funds were protected from garnishment by law, citing the same provision of the insurance code upon which they now rely.

Section 1108.051 of the insurance code states that

(a) Except as provided by Section 1108.053, this section applies to any benefits, including the cash value and proceeds of an insurance policy, to be provided to an insured or beneficiary under:

(1) An insurance policy or annuity contract issued by a *life, health, or accident insurance company*, including a mutual company or fraternal benefit society;

. . . .

(b) Notwithstanding any other provision of this code, insurance or annuity benefits described by Subsection (a):

. . . .

(2) are fully exempt from:

(A) *garnishment*, attachment, execution, or other seizure[.]

Tex. Ins. Code Ann. § 1108.051(a)(1), (b)(2)(A) (West 2009) (emphasis added).

The statute does not mention casualty insurance companies, and Rotella and Cole direct us to no authority to support casualty insurance companies being covered by this section. To the contrary, a federal bankruptcy court has

6

interpreted this statute to *exclude* casualty policies. *In re Powers*, 112 B.R. 178, 180–81 (Bankr. S.D. Tex. 1989) (distinguishing accident insurance from casualty insurance and noting that the Texas Insurance Code differentiates between the two types by providing separate statutes to govern the incorporation and operation of life, health, and accident companies on the one hand, and general casualty companies on the other). *Compare* Tex. Ins. Code Ann. §§ 841.001–.705 (West 2009) (pertaining to life, health, or accident insurance companies), *with id.* §§ 861.001–.703 (West 2009) (pertaining to general casualty companies). Because we may not "judicially amend a statute and add words that are not implicitly contained in the language of the statute," *see Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988), we decline Rotella and Cole's invitation to expand section 1108.051 to include casualty insurance companies, hold that the trial court did not abuse its discretion under the circumstances presented here, and overrule their first issue.

## IV. Interpleaded Funds

In their second and third issues, Rotella and Cole complain about the trial court's decisions regarding the ownership and disposition of the interpleaded funds.

7

## A. Fee Agreement

In their second issue, Rotella and Cole argue that the trial court erred by determining that the interpleaded funds belonged entirely to Rotella and not partially to Cole by assignment. Rotella and Cole had the burden to prove Cole's right to the interpleaded funds. *See Westbrook Constr. Co. v. Fidelity Nat'l Bank of Dallas*, 813 S.W.2d 752, 754 (Tex. App.—Fort Worth 1991, writ denied); *see also Marine Indem. Ins. Co. of Am. v. Lockwood Warehouse & Storage*, 115 F.3d 282, 289 (5th Cir.) (stating that a claimant to interpleaded funds has a burden of establishing its right to them by a preponderance of the evidence), cert denied 522 U.S. 967 (1997); *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 726 (Tex. App.—Dallas 2004, no pet.) ("In an interpleader action, each party making a claim to the funds at issue bears the burden of establishing his right to the funds.").

Rotella and Cole specifically argue that Rotella had to hire Cole to sue MCCC in federal court after MCCC refused to defend him pursuant to his insurance policy and, in exchange for prosecuting his lawsuit against MCCC, Rotella agreed to assign forty-five percent of any recovery from the litigation to Cole. Therefore, Rotella and Cole argue, Cole "acquired an ownership stake in the litigation," and when MCCC liquidated its liability to Rotella through the $200,000 settlement, forty-five percent of the $200,000 became Cole's property. They also argue that Cole had an equitable right to his share of the $200,000.

However, the exact nature of the fee agreement between Rotella and Cole is less than clear. The record reflects that Rotella and Cole had a legal services fee agreement dated April 1, 2007, for Cole to be paid

> 45% of the net proceeds . . . from any and all sums collected from the following matters:
>
> A.  [MCCC] litigation, including but not limited to, the lawsuit styled Mark Rotella, Mark Rotella Custom Homes, Inc. and Benchmark Custom Homes, Inc. v. Mid-Continent Casualty Company, Inc., and any other lawsuit attempting to recover on the Rotella Group's Mid-Continent policies, including but not limited to those insurance policies attached and identified as the following . . . .
>
> . . . .
>
> 6.  The aforementioned assignment constitutes an agreement between the Rotella Group and the Lawyer Group as *an assignment of a 45% interest in the recovery described above, as opposed to a contingent interest. This is not a contingent fee agreement* as a lawyer would ordinarily accept if it involved something like a personal injury matter, like a car wreck. . . . [Emphasis added.]

But during the course of the federal litigation and during the state court interpleader proceedings, Rotella and Cole also represented that Cole was owed fees based both on an hourly billing rate and under a contingent fee agreement. And in the May 12, 2009 release and indemnity agreement between Rotella and MCCC for the $200,000, Rotella represented and warranted to MCCC "that he and it are the only owners of the claims released herein by them and that they have not transferred, *assigned*, subrogated or otherwise encumbered said claims or any part thereof." [Emphasis added.]  Also, while the 2007 agreement's plain language attempts to assign an interest in Rotella's litigation pertaining to his

9

rights under the insurance policy—the terms upon which the underlying settlement agreement is based—the record does not contain the express written consent of the insurance company to the assignment, which the policy explicitly requires.[6]

The record reflects that Rotella and Cole never presented their "equitable right of assignment" argument to the trial court, thereby failing to preserve it for our review.[7] *See* Tex. R. App. P. 33.1. And based on all of the above, because the trial court could have reasonably found that Rotella and Cole did not meet their burden of proof with regard to the disposition of the interpleaded funds, we overrule the remainder of Rotella and Cole's second issue. *See Westbrook Constr.*, 813 S.W.2d at 754; *see also Marine Indem. Ins. Co. of Am.,* 115 F.3d at 289; *Johnson*, 148 S.W.3d at 726.

## B. Priority

In their third issue, Rotella and Cole complain that the trial court erred by prioritizing the disbursement of the interpleaded funds because Cole had a

---

[6]The policy states, "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."

[7]Further, although "[a]fter judgment, attorneys who earn a *contingency* fee are equitable owners (not mere claimants) of their portion of the judgment," *Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 689 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (emphasis added), the plain language of the 2007 fee agreement clearly states that this is *not* a contingent fee agreement.

superior right to the funds, the "Common Fund Doctrine" applied to the funds, and Rotella's child support arrearages took precedence over Cutting's claim.

### 1. Liens

Rotella and Cole first argue that if Cole did not own some of the interpleaded funds outright, "then [he] certainly held a claim or charge in the property at issue which would constitute a lien interest," and that Cole's contractual lien interest in the settlement funds attached prior to the garnishment and as early as April 1, 2007. Attorney's fee liens in Texas have been summarized as follows:

> [T]here are two types of liens for attorney's fees recognized by Texas law. First, in Texas, an attorney can assert a common law lien over a client's property in the attorney's possession. This is known as a possessory lien. "A possessory lien requires both actual possession by the attorney and that the property comes into the attorney's possession 'in his character as an attorney.'" . . .

> The second type of lien in Texas is created pursuant to a contractual agreement. "Under Texas law, a contract may establish an attorney's lien for money received in judgment or settlement of a matter." However, absent such a contract, no lien exists.

*Norem v. Norem*, No. 3:07-CV-0051-BF(G), 2008 WL 2245821, at *5–6 (N.D. Tex. June 2, 2008) (citations omitted).

The record reflects that Cole never possessed the interpleaded funds; therefore, he did not have a possessory lien. Further, nothing in the record shows a contractual lien in favor of Cole, and we have held above that no valid assignment of the settlement proceeds occurred. And Cole has not directed us

11

to any authority or evidence in the record to explain why or how a lien otherwise attached. We overrule this portion of Rotella and Cole's third issue.

### 2. Common Fund Doctrine

Rotella and Cole next argue that the common fund doctrine applies to trump the trial court's prioritization. However, the common fund doctrine does not apply to debtor-creditor relationships because the creditor's interest is not coequal with the debtor's claim to settlement proceeds. *Tex. Farmers Ins. Co. v. Seals*, 948 S.W.2d 532, 534 (Tex. App.—Fort Worth 1997, no writ) (stating that the common fund doctrine does not apply in a quantum meruit or debtor-creditor situation); *see also Bashara v. Baptist Mem. Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985) (defining the basis for the common fund doctrine as when "'one litigant has borne the burden and expense of the litigation that has inured to the benefit of others as well as himself [such that] those who have shared in the benefits should contribute to the expense'"). Here, Cutting is Rotella's creditor, and Rotella and Cole cannot claim a portion of the interpleaded funds used to satisfy Rotella's existing judgment debt as Cole's attorney's fees. *See Seals*, 948 S.W.2d at 534. We overrule this portion of Rotella and Cole's third issue.

### 3. Child Support

Finally, Rotella and Cole argue that $63,185.74 of the interpleaded funds should have been held exempt to allow Rotella to pay his child support arrearages, citing property code section 42.001(b)(3).

Section 42.001(b)(3) states that "alimony, support, or separate maintenance received or to be received by the debtor for the support of the debtor or a dependent of the debtor" is exempt from seizure and not included in the aggregate limitations prescribed by section 42.001(a). Tex. Prop. Code Ann. § 42.001(b)(3) (West 2009). Assuming this provision applies, Rotella and Cole do not have standing to bring this argument because the funds were not received or to be received by Rotella, a child support obligor, for his support or the support of his dependents—they were funds to be received by Rotella for settling one of his claims against his CGL insurer. *See id*.; *see also* Tex. Fam. Code Ann. §§ 157.311(2)(A) (West 2009) (stating that "claimant" means "the [child support] *obligee*" (emphasis added)), 157.312(a) (West 2009) ("A *claimant* may enforce child support by a lien as provided in this subchapter." (emphasis added)). Furthermore, the record reflects that the interpleaded funds were not "alimony, support, or separate maintenance." *See* Tex. Prop. Code Ann. § 42.001(b)(3). And the exemption under section 42.001 does not apply to a child support lien established under the family code. *See id.* § 42.005 (West 2009). We overrule the remainder of Rotella and Cole's third issue.

## V. Inadequate Briefing

In their fourth issue, Cole and Rotella assert that the trial court erred by granting summary judgments to Cutting and MCCC, complaining that fact issues remain in part because the trial court did not allow them to examine Cutting as to their counterclaims and their crossclaims in the garnishment proceeding, and by

13

sanctioning them $2,500 with regard to their discovery attempts. In their fifth issue, they argue that the trial court abused its discretion by awarding attorney's fees to MCCC when it acted as both a defendant and as an interpleader and failed to segregate its attorney's fees. They complain that MCCC was either not entitled to the amount of attorney's fees it received or that it was not entitled to the amount attributable to its defense rather than the interpleader.

An appellate brief must contain all points or issues relied upon, argument and authorities under each point or issue, and all facts relied upon for the appeal with references to the pages in the record where those facts can be found. *Weaver v. Sw. Nat'l Bank*, 813 S.W.2d 481, 482 (Tex. 1991); *see also* Tex. R. App. P. 38.1(g), (i). Furthermore, an appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument. *Hall v. Stephenson*, 919 S.W.2d 454, 466–67 (Tex. App.—Fort Worth 1996, writ denied). And "we know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them." *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (internal quotation omitted). Thus, an inadequately briefed issue may be waived on appeal. *Hall*, 919 S.W.2d at 467; *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing the "long-standing rule" that a point may be waived due to inadequate briefing). Further, the

complaint on appeal must be the same as that presented in the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).

In their fourth issue, Cole and Rotella's brief cites no authority, fails to set out the elements of their claims, and fails to cite evidence in the record to support their complaint that genuine issues of material fact remain regarding their counterclaims and crossclaims. *See* Tex. R. Civ. P. 166a(c), (i); Tex. R. App. P. 38.1(i). Rather, their argument consists of innuendo and speculation.[8] And with regard to their discovery and sanctions complaint, as reflected in Cutting's motions for protective order from subpoena granted by the trial court, Cutting resided out-of-state. Her counsel argued that her testimony was unnecessary, duplicative, and irrelevant and that Rotella and Cole had subpoenaed her solely to harass her and cause her to incur undue expense. In the second motion, Cutting's counsel also argued that the subpoena was untimely and requested sanctions.[9]

During the hearing on the motions, Cole argued that he needed Cutting's testimony because she had committed fraud on the court in the 2007 summary judgment and stated that he planned to file a bill of review if he could acquire her

[8]Rotella and Cole state, for example, "One would figure that [MCCC] would have taken every opportunity to pay as soon as possible," and "Why Mitchell would allow his client, [MCCC], to become embroiled in this controversy when a simple payment would have averted their involvement can only be explained by an agreement with Cutting that prevented him from doing so."

[9]The engineering firm also filed a motion for protective order from Rotella and Cole's subpoena and requested sanctions.

testimony. The trial judge replied that he did not see that there was any legal basis for attempting to subpoena Cutting or the engineering firm, stating,

> These are judgments. They're done. It's over. I have heard no reason whatsoever that would come close to saying that these witnesses can provide the court with any testimony that has any relevance whatsoever to enforcement of the judgment. They may all have testimony relative to winning a Bill of Review, but this ain't a Bill of Review. Maybe you can file one of these motions to take a deposition . . . .

*See* Tex. R. Civ. P. 202.1–.4 (setting out the procedure for taking depositions before suit or to investigate claims). Rotella and Cole have failed to explain how the trial court abused its discretion in light of this record. We hold that Rotella and Cole have waived their fourth issue due to inadequate briefing, and we overrule this issue. *See* Tex. R. App. P. 38.1(i).

With regard to their fifth issue, Cole was not present at the final hearing in this case, and Rotella stated that he did not know what to say about attorney's fees for MCCC.[10] They did not raise segregation of attorney's fees in their motion for reconsideration and for new trial. Rather, the motion complained MCCC was not entitled to any money based on the summary judgment. Because the complaint on appeal must be the same as that presented in the trial court, Rotella and Cole have failed to preserve this issue. *See Banda*, 955 S.W.2d at 272; *see also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("[I]f no one objects to the fact that the attorney's fees are not segregated

---

[10]Rotella moved for a continuance due to Cole's absence at the hearing, and the trial court denied it, but neither Rotella nor Cole raises this on appeal.

16

as to specific claims, then the objection is waived.").  We overrule Rotella and Cole's final issue.

## VI.  Conclusion

Having overruled all of Rotella and Cole's issues on appeal, we affirm the trial court's judgment.

                                                  BOB MCCOY
                                                  JUSTICE

EN BANC

Gardner, J. concurs without opinion.

DELIVERED: August 31, 2011